DANIEL T. MARTIN and C. L. MARTIN *vs.* W. H. ANGELL.

Equitable estoppels, or estoppels *in pais* growing out of the acts and declarations of the party sought to be estopped, are applied for the prevention of fraud, and only exist to prevent injury, when equity and good conscience require that the party should not be heard to gainsay his acts or declarations by which another person has been influenced in his conduct.

To create an estoppel which shall preclude a party from alledging the truth, it must appear, 1. That he has made some declaration, or done some act, inconsistent with the truth, with a design to influence the conduct of another; 2. That the party alledging the estoppel was ignorant of the truth, and relied and acted upon the faith of such acts or declarations ; 3. That an injury will result to him, if the other party is allowed to gainsay them.

C. entered into a contract with A. & B., by which he agreed to sell and transfer to them, at any time within two years, certain bank stock, at a specified price. Subsequently a conversation was had between C. & A., and others, in which C. informed those present of a proposition made to him by L. to purchase the stock. A. did not assert the claim of himself and B. upon the stock, under the contract with C., but told C. that he " could not advise him, but that he must exercise his own judgment." *Held* that the omission of A. to assert the claim or himself and B. under the contract, and to give notice to C. that their legal rights would be insisted upon, did not operate as an *equitable estoppel*, which would preclude a suit upon the contract, in the names of A. & B.

*Held also*, that whether the facts proved were evidence of a new agreement between A. and C., rescinding the first, and consenting to a sale of the stock to L., was a question of fact for the jury.

THIS action was brought for the benefit of the Lewis County Bank, as assignee of a contract dated March 17, 1846, by which the defendant agreed to sell and transfer at any time within two years, to the plaintiffs, all the stock in the Lewis County Bank which he had purchased of them, and to which he should get title, at the rate or price the same should stand him in.   It appeared upon the trial that the defendant obtained the title to 787 shares of the stock under the arrangement, and that in August, 1847, a tender of between nine and ten thousand dollars was made, in the name and behalf of the plaintiffs, and a conveyance of the stock demanded.   It also appeared that in September, 1846, the defendant sold to Lyon, the present cashier of the Lewis County Bank, the stock in question for $10 per

Martin *v.* Angell.

share; that the bank was then enjoined from the transaction of business, and proceedings were pending for the appointment of a receiver; that there was a proposition that the stockholders should pay in fifty per cent of their stock, in order to prevent the appointment of a receiver, and sustain the bank; that Mr. Lyon, who was then a large stockholder, refused to accede to the proposition, and insisted that the bank should go into the hands of a receiver, unless he, and his friends, could have the control of it by the purchase of a majority of the stock, and refused to make any terms with the defendant, to enable the bank to go on with its business, but offered the price which was finally accepted by the defendant, for the stock, which was its full value; that after he purchased the stock of the defendant, Lyon became cashier of the bank, and afterwards, for the benefit of the bank, purchased from the plaintiffs the contract of the defendant upon which this action was brought.

Before the sale of the stock by the defendant to Lyon, an interview was had at Mr. Bennett's office, between the defendant and David T. Martin, one of the plaintiffs, and John W. Martin, in relation to the sale of the stock to Lyon, in which much was said upon that subject, and the defendant stated the offer of Lyon, and that he refused to make any terms or consent to any arrangement by which the bank could be permitted to go on with its business and the defendant remain the owner of the stock. During this conversation David T. Martin did not object to the proposed sale, but said that he could not advise the defendant, and that he must exercise his own judgment. At the close of the evidence the defendant moved for a nonsuit, upon the ground, among others, that David Martin consented and agreed to the sale and transfer of the stock to the said Lyon, and was thereby estopped from calling on the defendant for a conveyance of the stock, pursuant to the written contract. The plaintiffs' counsel insisted that nothing like an estoppel was shown; that the court could not say the fact of consent to transfer the stock to Lyon was so established as to constitute an estoppel, and that the motion should be denied. The judge decided that the evidence given of what passed at Bennett's office,

Martin *v.* Angell.

estopped David Martin from now calling upon the defendant under the contract in evidence, to transfer the stock to the plaintiff; and on that ground he nonsuited the plaintiff. The plaintiff, on a bill of exceptions, now moved for a new trial.

*S. Beardsley,* for the plaintiff.

*T. C. Chittenden,* for the defendant.

*By the Court,* ALLEN, J. The only material question presented by the bill of exceptions in this cause, is whether the facts found upon the trial created an estoppel, and precluded the plaintiffs from enforcing the contract of March, 1846. As an estoppel operates to exclude evidence, the question whether it has been established must necessarily be a question of law, to be decided by the court, although it may incidentally require the decision of questions of fact. The judge was therefore right in deciding the question as matter of law, and not submitting it to the jury. (*Co. Litt.* 352 *a. Steph. Pl.* 239. *Lewis* v. *Carstairs,* 5 *Watts & Serg.* 209. *Dezell* v. *Odell,* 3 *Hill,* 215. *Hall* v. *White,* 3 *C. & P.* 136. *Cowen & Hill's Notes,* 200 *et seq.*) The doctrine of estoppels, legal as well as equitable, has been so frequently and fully discussed in the recent cases in this country and in England that a review of the cases, or an elaborate discussion of the principle, would be out of place. The doctrine of equitable estoppels, to the extent to which it is now carried, is comparatively of modern origin; or in other words, by the recent decisions it has been extended to cases in which it would not have been applied at an earlier day. As there is no pretence of a technical or legal estoppel, which must be by deed or matter of record, it is with this equitable estoppel, or estoppel *in pais,* growing out of the acts and declarations of the party sought to be estopped, that we have to do in this case. Such estoppels are applied for the prevention of fraud, and only exist to prevent injury when equity and good conscience require that the party should not be heard to gainsay his acts or declarations by which another person has been influenced in his con-

Martin *v.* Angell.

duct. (*Greenl. Ev.* § 207.) To create an estoppel which shall preclude a party from alledging the truth it must appear, 1. That he has made some declaration, or done some act, inconsistent with the truth, with a design to influence the conduct of another; 2d. That the party alledging the estoppel was ignorant of the truth, and relied upon and acted upon the faith of such acts or declarations; and 3d. That an injury will result to him if the other party shall be allowed to gainsay them. (*Robinson* v. *Nahon*, 1 *Camp.* 245. *Greenl. Ev.* § 27. *Parker* v. *Barker*, 2 *Met.* 423, 431. *Dezell* v. *Odell, supra. Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 483. *Tufts* v. *Hayes,* 5 *N. Hamp. Rep.* 453. *Pickard* v. *Sears, & Ad. & El.* 469. *Gregg* v. *Wells,* 10 *Id.* 90. *Stephens* v. *Baird,* 9 *Cowen,* 274.) Testing this case by this rule, which appears to be well established by the cases cited, it wants many of the ingredients of an equitable estoppel, which would operate to preclude the plaintiffs from insisting upon the contract of March, 1846. (1.) Martin, upon the occasion relied on by the judge at the trial as establishing the estoppel, made no declarations or representations whatever in relation to the contract. (2.) The existence of that contract, and every fact connected with it and material to determine the rights of the parties to it, were as well known to the defendant as to Martin. There was no withholding or concealment of facts; and the defendant was as much bound to understand the law as was Martin. It is true that Martin did not, upon that occasion, assert the claim of himself and co-plaintiff under the contract, and give notice to the defendant that their legal rights would be insisted upon. But if they had legal rights they were known to the defendant as well as to Martin; and it was his duty to protect himself against them, if he did not mean to acquiesce in them. Neither did the defendant, upon that occasion, assert that in case of a sale of the stock to Lyon he should not perform the contract or should consider it rescinded, so as to make it necessary for Martin to speak under the penalty of being forever thereafter silent upon the subject of any claim under the contract. How can it be said that a fraud was perpetrated upon the defendant by the omission of Martin to speak of mat-

Martin *v.* Angell.

ters equally well known to the parties, and of which the defendant did not choose to speak? Fraud and injury must concur, to create an estoppel *in pais.*

But it is said that the evidence establishes the consent of Martin to the transfer of the stock, which necessarily disabled the defendant to perform his contract. Whether it necessarily follows that by such transfer the defendant would not be able, or did not design, to fulfil his contract, I do not deem it necessary to consider. The only effect of the evidence, in this view, to give it its utmost latitude, would be to establish a new agreement between the parties rescinding the agreement upon which the action is brought. An agreement may be rescinded expressly by an agreement to that effect; or by a technical release; or impliedly by a new agreement inconsistent with the first. (*Chit. on Cont. 7th Am. from 3d Lond. ed.* 741, *note u.*) What effect should be given to the evidence as tending to establish such new agreement is not before us for decision. It is very clear that whether there was or was not a new agreement, either expressly or impliedly rescinding the agreement of March, 1846, or whether the defendant supposed that Martin assented to such rescinding, and was authorized so to suppose from the acts or declarations of Martin which would bind Martin as upon a formal agreement, would be a proper question for the jury under proper instructions from the court. It could not create an estoppel which would authorize the court to take the case from the jury. If the defendant had introduced in evidence a technical release, purporting to have been executed by the plaintiffs, the genuineness of the release, and whether procured by fraud, would have been a question for the jury. So in this case, the existence of a new contract, or a state of facts which shall be evidence of a new contract between the parties, were proper questions for the jury. But without pursuing this subject further, it is sufficient to say that there was no estoppel established by the evidence, which justified the nonsuit. A new trial must be granted; costs to abide the event.