Paul *v.* Hadley.

---

## PAUL *vs.* HADLEY.

In cases of executed sales of personal property, the common law rule is that the vendor is not liable for damages arising from latent defects known to him and unknown to the purchaser; except when the vendor has warranted the article sold, or has made false representations, or has used some active means to conceal such defects, or some artifice to mislead or deceive the purchaser in regard to such defects.

If the vendor is merely *silent,* he is not responsible for damages by reason of such defects. The rule of *caveat emptor* applies, in such cases.

APPEAL from a judgment of the St. Lawrence county court. The action was commenced before a justice of the peace.

In the spring of 1855 the plaintiff purchased of the defendant a bull, which was then two years old, for the sum of $10. The bull was purchased by the plaintiff for the use of his cows, and the defendant knew that the plaintiff bought him for that pur-

Paul *v.* Hadley.

pose. When the bull was a yearling he got no calves. The defendant knew this fact and did not communicate it to the plaintiff, nor had the plaintiff any knowledge of it. After the plaintiff ascertained that the bull did not get his cows with calf, and later than is usual in the season, he drove 19 of his cows to another bull, at an expense of 25 cents each, and the service of this last animal was worth 50 cents for each cow. The cost of driving the 19 cows and use of bull amounted to $14.25, for which the justice rendered judgment for the plaintiff with costs. The defendant did not appear on the trial. On appeal to the St. Lawrence county court the judgment was affirmed, and the defendant appealed to this court.

*Knowles & Chipman*, for the appellant.

*Dart, Dewey & Tappan*, for the respondent.

*By the Court*, ROSEKRANS, J. There are two counts in the complaint: one alleged that the defendant sold to the plaintiff a 2 years old bull for $10, and falsely and fraudulently represented to the plaintiff that the animal was a good smart bull, when in fact he was useless as a bull and unable to get cows with calf, to the knowledge of the defendant, whereby the plaintiff sustained damages by putting his cows to said bull, and having to put them to another bull, causing them to come in late, and trouble and expense in driving them to another bull. The other count alleged that the bull was impotent and worthless as a bull and the defendant knew it, and falsely and fraudulently concealed this fact from the plaintiff, whereby the plaintiff sustained the damages set out in the first count of the complaint. No evidence was given to sustain the first count, and the evidence was wholly insufficient to sustain the second. If the animal was impotent when a yearling, it did not follow that he would remain so when he became two years old, and there was no evidence that the defendant had any knowledge of his impotency at the time of the sale. He was sold in the spring of his second year, before his powers were called into

Paul *v.* Hadley.

exercise. The only evidence that the defendant knew the animal was impotent when he was two years old, was the fact that he got no calves when he was a yearling. But if the bull was impotent when he was sold, and the defendant knew that fact and did not communicate it to the plaintiff, it is questionable whether the action can be sustained. The only proof in the case is that the defendant *was silent upon that subject.* The rule is thus laid down in 1 *Parsons on Contracts,* 461: "If the seller knows of a defect in his goods which the buyer does not, and if he had known would not have bought the goods, and the seller *is silent and only silent,* although this is a moral, it is not a legal fraud. The weight of authority is that there should be some *active fraud.* The common law does not oblige a seller to disclose all he knows which lessens the value of the property he sells. He may be silent, leaving the purchaser to inquire and examine for himself, or to require a warranty. He may be silent and be safe, but if he be more than silent, if by acts, and certainly if by words, he leads the buyer astray, inducing him to suppose he buys with warranty, or otherwise preventing his examination or inquiry, this becomes a fraud of which the law takes cognizance. The distinction seems to be, (and it is grounded upon the apparent necessity of leaving men to take some care of themselves in their business transactions,) that the seller may let the buyer cheat himself *ad libitum,* but must not actually assist him in cheating himself."

Chancellor Kent lays down the rule somewhat differently. (2 *Kent's Com.* 484.) He says, "the writers of the moral law hold it to be the duty of the seller to disclose the defects which are within his knowledge, but the common law is not quite so strict. If the defects in the article sold *be open equally* to the observation of both parties, the law does not require the vendor to aid and assist the observation of the vendee." "Where the means of information relative to facts and circumstances affecting the value of the article sold are equally *accessible to both parties,* and neither of them does or says any thing tending to impose upon the other, the disclosure of any superior knowledge which one party may have over the other, as to those facts and

circumstances, is not requisite to the validity of a contract." " The common law affords to every one reasonable protection against fraud in dealing, but it does not go the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." " *It requires the purchaser to apply his attention to those particulars which may be supposed to be within the reach of his observation and judgment, and the vendor to communicate those particulars and defects which cannot be supposed to be immediately within the reach of such attention.* If the purchaser be wanting of attention to these points, when attention would have been sufficient to protect him from surprise or imposition, the maxim *caveat emptor* ought to apply." " And if the vendor be wanting in good faith, *fides servanda* is a rule equally enforced at law and in equity." Judge Story says, (1 *Eq. Jur.* § 207,) " The true definition of *undue concealment* which amounts to fraud in the sense of a court of equity, and for which it will grant relief, is the non-disclosure of those facts and circumstances, which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right not merely in *foro conscientia*, but *juris et de jure* to know." And in regard to the doctrine laid down by Chancellor Kent, that " as a general rule each party is bound in every case to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them, and they be not open and naked or equally within the reach of his observation," he remarks, " that this doctrine, in this latitude of expression, may be thought not strictly maintainable or in conformity with that which is promulgated by courts of law and equity. (§ 208.) The doctrine of Chancellor Kent would seem to require some qualification, by limiting it to cases where one party is under some obligation to communicate the facts, or where there is some peculiar known relation, trust or confidence between them, which authorizes the other party to act upon the presumption that there is no concealment of any material fact." After stating the rule of the civil law to be as laid down by Chancellor Kent, Judge Story says, (§ 212,)

Paul *v.* Hadley.

"In regard to intrinsic circumstances, the common law, however, has in many cases adopted a rule very different from that of the civil law, and especially in cases of sales of goods.   In such cases the maxim *caveat emptor* is applied, and *unless there be some misrepresentations or artifice to disguise the thing sold, or some warranty as to its character or quality,* the vendor is understood to be bound by the sale, notwithstanding there may be intrinsic defects and vices in it materially affecting its value."   And he adds, "however questionable such a doctrine may be in its origin, in point of morals or general convenience, (upon which many learned doubts have at various times been expressed,) it is too firmly established to be now open to legal controversy; and courts of equity as well as courts of law, abstain from any interference with it."   Blackstone says, (2*d Vol.* 451,) "With regard to the goodness of wares purchased, the vendor is not bound to answer, unless he expressly warrants them to be sound and good, or *unless he knew them to be otherwise and hath used any act to disguise them, or unless they* turn out to be different from what he represented to the buyer."   He refers as authority for this doctrine to 2 *Roll. R.* 5.   *Ross on Vendors,* 335 (*Law Lib. Vol.* 12, 172,) states the doctrine in nearly the same words as Blackstone.   The case of *Fleming* v. *Slocum,* (18 *John.* 403,) relied upon by the plaintiff's counsel, decides nothing to the contrary of this rule as laid down in Blackstone and Story.   The action was to recover damages for fraudulent concealment of the bad qualities of a stove, and the plaintiff was unable to prove the fraudulent concealment, and was nonsuited for that reason.   Upon a motion to set aside the nonsuit, the only question was whether the proof was sufficient to sustain the action.   The only ground upon which the allegation of a fraudulent concealment was founded, was the round price paid by the plaintiff for the stove.   Ch. J. Spencer says, "That when it is made to appear that a vendor has been guilty of fraudulent concealment of a material fact, to the injury of the vendee, an action at law can be sustained to recover damages," and "a *suppressio veri* is equivalent to a *suggestio falsi.*"   But he adds, "it is the plaintiff's misfortune that he did not expressly

guard against the imposition practiced upon him, or that he has no evidence of *any representations* made to him by the defendant. He omits however to ·define what is in law a *fraudulent* concealment or *suppressio veri*, and the case did not call upon him to do so. *Aliud est celare, aliud tacere."* The rule laid down by Chancellor Kent, that each party to a sale is bound to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them, and they be not open or naked, or equally within the reach of observation, was subsequently, in a note, qualified so as to confine the obligation to declare such facts to a party who was under some obligation by confidence reposed or otherwise, to communicate them fairly and truly. (2 *Kent's Com.* 482. *Bench* v. *Sheldon,* 14 *Barb.* 72.) The rule thus qualified is conformable to that cited above from *Parsons on Contracts* and *Story's Eq. Juris.* The remark of Johnson, J., in *Bench* v. *Sheldon,* (*supra,*) that " in. the case of sales of property, the law presumes the purchaser reposes confidence in the vendor as to all such defects as are known to the vendor, and are not within the reach of ordinary observation, and therefore imposes upon him the duty to declare fully and fairly his knowledge of such defects," was not called for by the case, and is not supported by any citation of authority from common law elementary works, or common law decisions. It has been held that a *purchaser* is not bound to declare to the vendor any intrinsic or extrinsic fact or circumstance peculiarly within the knowledge of the purchaser, which would enhance the value of the property sold, and which if known to the vendor would prevent the sale. (*See Fox* v. *Macreth,* 2 *Bro. C. C.* 420 ; *Turner* v. *Harvey, Jacob's R.* 178 ;' *Laidlaw* v. *Organ,* 2 *Wheat.* 178 ; *Bench* v. *Sheldon, supra.*) The purchaser may be silent in relation to such facts and circumstances and avail himself of his superior knowledge. All that is required of him is that he should do no act calculated to mislead the vendor. He is not authorized to practice any imposition upon the party with whom he is dealing, or in the language of the authorities above cited, is not to be guilty of any active fraud. I am unable to conceive of any reason in law or morals,

Paul *v.* Hadley.

why the rule should be more stringent upon the vendor than upon the vendee. In cases of executed sales the common law rule is, I conceive, that the vendor is not liable for damages arising from latent defects known to him and unknown to the purchaser, except in cases where the vendor has warranted the article sold, or has made false representations, or has used some active means to conceal such defects, or some artifice to mislead or deceive the purchaser in regard to such defects, and that if the vendor is merely silent he is not responsible for damages by reason of such defects. The rule of *caveat emptor* applies in such cases. The recent case of *Keates* v. *Cadogan*, (2 *Eng. L. & Eq. R.* 318,) is based upon a similar principle. In that case the defendant, knowing that a house belonging to him was in a ruinous state and dangerous to occupy, and that its condition was unknown to the plaintiff, and that the plaintiff took the house for the purpose of residing in it, leased it to the plaintiff without disclosing to him the condition of the house. The plaintiff took possession of the house, and soon after a portion of it fell down and was not habitable, and the plaintiff brought an action on the case, alleging these facts, and that it was the duty of the defendant to have disclosed to the plaintiff the ruinous and dangerous condition of the house. Upon demurrer it was held that the plaintiff could not recover ; that there was no obligation on the part of the defendant to say any thing in regard to the state of the house, and as there was no warranty that the house was fit for immediate use or any misrepresentation made by the defendant, the action would not lie. There are cases where goods are purchased for a particular purpose, in which the vendor will be held responsible in case the goods are not fit for the purpose for which the purchase is made. The plaintiff in this case, however, cannot avail himself of this rule, for the reason that he sets up no such claim in his complaint, and as the defendant did not appear in the suit he has not waived any right to raise the objection here. The proof given, that the plaintiff purchased the bull for the use of his cows, and that the defendant knew that the plaintiff purchased for that purpose,

was not admissible under the complaint, and the judgment should be reversed for that reason, if for no other.

Judgment of the county court and of the justice reversed, with costs.

[SARATOGA GENERAL TERM, January 6, 1857. *C. L. Allen, James, Rosekrans* and *Paige,* Justices.]