Lounsbury *v.* Depew.

Justices GRAY, MASON and CAMPBELL concurred in the above conclusion, upon the ground that they thought the decision in *Quin* v. *Moore* was decisive of the question whether the plaintiff as administrator of his wife could sustain this action.

Motion for a new trial denied, with costs.(*a*)

[DELAWARE GENERAL TERM, July 6, 1858. *Gray, Mason, Balcom* and *Campbell*, Justices.]

(*a*) In *Keller, adm'r &c.,* v. *The New York Central Rail Road Company,* decided at the same term, a similar decision was made.. That was an action growing out of the same occurrence which was the foundation of the above action. It was brought by the plaintiff, B. Keller, as administrator of Rachel Keller, his mother, to recover damages arising from injuries sustained by her on that occasion, by which she was killed. The intestate was a widow, and had no child at the time of her death, under the age of 21 years, or relative who was dependent upon her. The plaintiff obtained a verdict, for $1700, and the defendant moved for a new trial, on the ground that the intestate left no husband or next of kin who sustained any pecuniary loss by reason of her death. The court denied the motion for a new trial, for the same reasons assigned in the above case. (Opinion by BALCOM, J.)

---

## LOUNSBURY *vs.* DEPEW.

Where a promissory note was shown to have been in the possession of, and owned by, the payee within four or five days of his death, and there was no evidence of any transfer thereof by him, in his lifetime, but about two weeks after his death his widow was in possession of it, claiming it as her own, and she subsequently negotiated it to the plaintiff; and it appeared that the payee died intestate and indebted, and no letters of administration had been issued: *Held* that it was to be inferred, from these circumstances, that the note belonged to the payee, at the time of his death, and that his widow not being his legal representative, nor the owner of the note, had no right to transfer the same to the plaintiff. WRIGHT, P. J., dissented.

*Held also,* that the defendant was not *estopped* from setting up a want of title in the plaintiff, by the fact of his having made payments upon the note, while it was held by the widow, and to the plaintiff after it came into his hands, some of which payments were indorsed upon the note by the defendant in his own handwriting. WRIGHT, P. J., dissented.

Estoppels, as they operate to exclude the truth, must be strictly construed. *Per* HOGEBOOM, J.

THIS is an appeal by the defendant from a judgment rendered in favor of the plaintiff on the 1st day of July, 1856, upon the report of a referee. The plaintiff's claim was for a sum of $34.93, found due from the defendant to him on settlement, on the 16th of March, 1855, and also for the amount of a promissory note executed by the defendant, dated the 18th of March, 1855, and payable to James Carroll or bearer, one day from date, with interest. Judgment was rendered in favor of the plaintiff for both of these amounts, with costs. James Carroll, the payee and original holder of the note, died in the latter part of March, 1855. By the report of the referee it appears that the note was *at one time* his property. The referee gives no specific date. By the evidence of William T. Hornbeck it appears that the witness knew of Carroll's holding this note, about six weeks before his death, and by the evidence of John Hornbeck it appears that Carroll had the note three weeks before his death; indeed, within two weeks of his death, for the same witness swears that Carroll was sick for two weeks and that during his sickness the witness, at his request, took the note and collected some money on it from the defendant, which is indorsed on the note. There are only two indorsements on the note in March, 1855, to wit: the 26th and 27th of March, and as Carroll died in the latter part of March, the payments must have been made at farthest within four or five days of his death. There is no evidence of the transfer of the note by Carroll. His widow, Mary Ann Carroll, is shown to have been in possession of it about two weeks after his death. She was sworn in the case and testified that she negotiated it to the plaintiff and got the amount of it in trade at his store in June, 1855, in family necessaries; that she expected the plaintiff knew how she came by the note, but did not recollect that she told him she got it from her husband; that it was generally understood in the neighborhood how she got the note. She subsequently says, that she told him she had a note which Carroll had *given* to her as hers. It does

not appear *when* this alleged gift was made. William T. Hornbeck testifies that on the occasion when Carroll spoke to him about the note, he also said that he had told his wife to put the note in the trunk "and then I will know where to find it, or if you should want it." Carroll owed debts when he died, which are still unpaid, and left him surviving a wife and two children. Carroll left no will, and no letters testamentary or of administration were taken out upon his estate. The defendant made repeated payments upon the note, to the widow or her agent, after her husband's death, which were indorsed upon the note in the defendant's handwriting, which handwriting was known to the plaintiff. The defendant also made two or more payments upon the note to the plaintiff himself. The creditors of Carroll forbade him to pay on the note. The parties all resided in the same village or neighborhood, and were well acquainted with each other. The widow, before transferring the note to the plaintiff, applied to the defendant for a payment upon it, which he did not make, and she then informed him she should sell the note, and he said "sell on." Upon these facts the referee reported in favor of the plaintiff for the amount of both the account and note, and the defendant duly excepted.

*C. B. Cochran,* for the defendant.

*E. Cooke,* for the plaintiff.

HOGEBOOM, J. The report of the referee leaves it uncertain what was the latest date at which Carroll was in possession of the note; but it is apparent from the testimony that it must have been within a few days of his death. No transfer of the note by him is shown. The evidence fails to show satisfactorily even an attempted gift; although the widow *stated* to the plaintiff that her husband had given her the note. But the *fact* of the gift is not expressly sworn to; the *manner* of it is not shown; nor does it appear that any *delivery* ever

accompanied the donation. Nor could the husband, under the circumstances, make a valid gift of the note. He was *indebted* at the time, and his creditors had a right to his property, and notified the defendant not to pay to the widow. I think we must infer that the note belonged to James Carroll, at the time of his death. If so, the plaintiff does not make title to it. He received it from the widow, and she had no right to transfer it. It could only be done by the *legal representative* of Carroll, and none such was ever appointed. (*Edwards* v. *Campbell*, 23 *Barb.* 423. *Woodin* v. *Bagley*, 13 *Wend.* 453. *Beecher* v. *Crouse*, 19 *id.* 306. *Jenkins* v. *Freyer*, 4 *Paige*, 47.) An administrator may yet be appointed, and in that case the defendant would have no legal defense to an action brought by him upon this note. The defendant is not *estopped* by his payments to Mrs. Carroll and to the plaintiff. They are proper evidence for a jury to consider, but are not in their nature or effect conclusive. So far as the plaintiff is concerned, the case lacks one of the most material ingredients of an estoppel, to wit: that the defendant by his declarations or conduct induced the plaintiff to become the purchaser of the note. It is a fallacy to suppose that this inducement took place by the defendant having indorsed on the note in his own handwriting some of his payments, which handwriting was known to and inspected by the plaintiff before he purchased the paper. This does not amount to a representation by the defendant *to the plaintiff*, on the faith of which he has a right to act. The representation, if it be one, was not made *at the time*, nor to the plaintiff, nor in his presence or hearing; nor for the purpose of inducing action on the part of the plaintiff; nor upon an occasion when the defendant spoke or was called upon to speak. (*See Reynolds* v. *Lounsbury*, 6 *Hill*, 534; *Martin* v. *Angell*, 7 *Barb.* 407; *Pennell* v. *Hinman, Id.* 644.) Estoppels, as they operate to exclude the truth, must be strictly construed. If the defendant had stood by, at the time of the transfer of the note to the plaintiff by the widow, and the latter had then represented the

note as owing to her by the defendant, and he had not denied it, or had acquiesced in it, and the plaintiff had taken the note upon such representation, that would have constituted an estoppel. But the defendant was *not present:* he was ignorant of the representations made by Mrs. Carroll, and in no way contributed to induce the plaintiff to give confidence to them. All that he did was, on a previous occasion, to make payments upon the note, to the widow. Perhaps, at the time he did so, he was ignorant of the facts ; perhaps he was himself induced by false representations to suppose that she was the bona fide holder and owner of the note; perhaps he did it under the expectation and promise by her that she would take out letters upon the estate and credit him with the payment in the capacity of administratrix. We can imagine a variety of reasons which might have operated upon him to induce him to make the payment, quite consistent with the absence of any legal obligation to do so, when the facts became fully known.

Nor are the payments to the plaintiff himself an estoppel upon the defendant. They are strong evidence of a supposed legal liability, but not a conclusive bar. He may have been ignorant of the facts ; he may not have had time to inquire ; and the amount of the payment may have been so small as to be a matter of indifference whether it was legally collectable or not. There is no just reason for compelling a party to pay the residue of an unjust demand, simply because he has paid a portion of it without objection. The whole doctrine of estoppel rests upon this foundation, that a party has refused to speak when he ought to have done so, and has omitted to make known important facts, the knowledge of which would have induced a different course of action, from what would have taken place if all the facts had been disclosed. Although the doctrine of estoppel is not always carefully expressed, the cases all go upon the assumption that the party estopped is guilty of a false statement, or of a concealment of material facts, at a time when he has an opportunity and is

called upon to speak, which representation or concealment has had a material influence upon the conduct of a third party who would now suffer injury without fault on his part, if the real truth were disclosed and allowed to have its legitimate effect. (*Welland Canal Company* v. *Hathaway*, 8 *Wend.* 480. *Dezell* v. *Odell*, 3 *Hill*, 215. *Lowry* v. *Tew*, 3 *Barb. Ch.* 407. *Outwater* v. *Dodge*, 6 *Wend.* 397. *Tylee* v. *Yates*, 3 *Barb.* 222. *Petrie* v. *Feeter*, 21 *Wend.* 172. *Truscott* v. *Davis*, 4 *Barb.* 495. *Lewis* v. *Woodworth*, 2 *Comst.* 512. *L'Amoreux* v. *Vischer*, *Id.* 281.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

GOULD, J., concurred.

WRIGHT, P. J. dissented.

Judgment reversed.

[ALBANY GENERAL TERM, September 6, 1858. *Wright, Gould* and *Hogeboom*, Justices.]