PAULINA TWINAM, Respondent, *v.* JAMES H. SWART, Appellant.

(GENERAL TERM, THIRD DEPARTMENT,       , 1871.)

4   263
59h 271
4L 263
24ap607
4L 263
57ad 24
e57ad 25
4L   263
69 AD¹439

A constable need not consult a judgment debtor as to what part of his pro-perty is exempt from execution before a levy thereon; but he is justi-fied in taking and selling the debtor's property, though exempt, if not informed of the exemption, and, it seems, unless the exemption is claimed within a reasonable time after notice of the levy.

The purchaser of property exempt from execution, at an execution sale, is not liable in an action for its recovery, brought without demand by the owner, who, being present, failed to claim the exemption, but forbade the sale upon grounds having no foundation in fact.

In replevin for a horse, the plaintiff gave bonds and obtained the property, which was retaken by the defendant on security given by him. No ground for exemplary damages to plaintiff was shown. The court charged that if the plaintiff recovered, he was entitled, in addition to actual damages for detention, to recover for use of the horse.—*Held,* that the charge was error.

It seems in such cases the measure of damages is ordinarily the interest upon the value of the property from the time of the taking to the time of assessment.

THIS is an appeal from a judgment entered upon the ver-dict of a jury on a trial at circuit in Montgomery county.

The action was brought by the plaintiff to recover of the defendant the possession of personal property, to wit, one gray mare, under the provisions of the Code (§§ 206 to 217), entitled "claim and delivery of personal property." The defendant was the purchaser of the property in question, at a constable's sale, upon execution issued out of the justice's court upon a judgment against the plaintiff and another. The proceedings upon the justice's judgment and the execution and constable's sale were all regular in form. The plaintiff claimed the property as being exempt from levy and sale as part of a necessary team to conduct her business, she being a householder. The other material facts suffi-ciently appear in the opinion.

*Gott & Garfield*, for the respondent.

*F. Fish*, for the appellant.

Present—MILLER, P. J.; POTTER and PARKER, JJ.

POTTER, J. The levy upon the property by the constable, by virtue of an execution against the plaintiff, issued upon a judgment against her, was not a trespass *ab initio* or a tortious act *per se*. *Prima facie*, all property is liable to execution, and it was the duty of the constable in the first instance to make the levy. He cannot know intuitively that property is exempt, nor indeed that exemption will be claimed if it is. Exemption is a personal privilege, and must be claimed by the party entitled or it will be deemed in law as waived, and the constable justified in his act of taking and selling. The authorities to sustain this view are too familiar to require citation. If I am right in these propositions, I think the learned judge in his charge to the jury was in error when he charged them in the following language: "The constable swears that he levied on this property after the execution was issued to him, without calling upon her; had no conversation with her; and if the property was exempt, she had the right to bring this action without demand. No demand was necessary; her right of action was perfect. I charge you, "that no demand was necessary under the circumstances of the case, *for the reason* that the constable swears that before having any conversation with her, after the issuing the execution, he levied on the property; and the property being exempt, that makes *him* liable, and all who claim title through him." This charge, I think, is not only erroneous, as containing illegal propositions, but it caused, by implication, a most probable misleading of the jury. It carries with it the idea that the constable is bound to call upon the owners of property and consult with them, before he can dare to perform the duty of making a levy; for this is twice repeated in the extract I

have made from the charge. I think no authority can be found to sustain this idea. So, too, I think, there is error in this statement: "If the property was exempt she had the right to bring the action at once without demand." This is to put a public officer in a strait certainly not known in the books of authority. It would be intolerably oppressive to place the constable in the dilemma, of liability to an action if he refuses to levy his execution, and to an action of trespass, if he does, and yet such is the effect of this holding. The case of *Dains* v. *Prosser* (32 Barb., 291) holds, as we have above stated, that, *prima facie*, all the personal property of a judgment debtor is liable to levy and sale upon execution, and that no property in his possession is exempt *per se*. The constable then is liable if he does not levy, and by the rule above laid down by the learned judge, he is also liable at once, without notice of the claimed exemption, and without demand if he does levy. This is not giving him that protection which the well settled rule of law ever holds out to public officers, that every reasonable intendment shall be made in their favor. It is in violation of the equally well established rule, that the burden, or affirmative of showing the exemption, is upon the party who claims it, as was observed by MASON, J., in *Seaman* v. *Luce* (23 Barb., 250). The officer could never know until the verdict of the jury was received, whether he had rightfully executed his process in regard to exempt property or not. The judge who tried the case of *Seaman* v. *Luce*, charged the jury in effect, that the plaintiff in such case must within a reasonable time after notice that a levy had been made, and before commencing his action, give notice to the officer making the levy, that he claimed the exemption, and that unless he did so, he could not recover. This would seem to be a more reasonable rule. This charge was excepted to, but the General Term held it sound. I think it was not only sound, but is the only common sense view that can be taken, of the duty of a public officer in such a condition of things.

Twinam *v.* Swart.

Judge MASON also, in the same case, observes in effect: "The plaintiff claims ana insists that the officer must, before he makes a levy, notify the debtor that he has an execution, and is about to levy, and require him (the debtor) to elect what property he will claim as exempt; and that if the officer levies without such notice to the debtor, and the property taken is exempt property, such levy is wrongful and the officer becomes liable to an action." He adds, "the doctrine contended for by the plaintiff, it seems to me, would be a very impracticable one. The officer would, in many cases, find himself to be utterly powerless in attempting to enforce his execution under such a rule, and the debtor in many cases might annoy the officers with difficulties which it would be very unjust that he should possess the power to do." The officer in this case before us who made the levy, within two or three hours after the levy, informed the plaintiff of it. He did not know that she was a householder. She, the plaintiff, then made no claim that the property was exempt; on the contrary, she falsely denied the pretended ownership, claimed that it belonged to her brother, and repeated this to him several times; thus misleading, and, as may be supposed, putting the officer off from all necessity of inquiry as to her exemption. Indeed, she threatened him that her brother would make him pay for the horses; nay, more, in the presence of the officers, just before the sale, to a Mr. Putnam, who proposed to aid her by paying the judgment and taking a mortgage on the horses if she owned them, she declared that she would not lie about it; they belonged to her brother, Dr. Fraser, of Lansingburgh; thereby directing the mind of the officer from any necessity of inquiry as to exemption. Three witnesses testify to her being present at the sale, and that she made no claim that the horse was exempt. In her silence, before and at the sale, as to the right of exemption; in her false avowal of ownership, which was calculated to mislead the officer and the defendant as a purchaser; in her forbidding the sale, either the moment before or one moment after, not on the ground of exemption,

Twinam *v.* Swart.

but without giving any ground, unless it may be inferred that it was in behalf of her brother, whom she still claimed was the owner, it cannot be, it is not law, that she had a right to bring this action against the purchaser who had thus heard her declarations, and recover without having first made a demand. Her right of action was not perfect, either by reason of the officer's levy, or for the reason that the officer levied without any previous conversation with the plaintiff.

Nor is it the law, as I understand it, that persons who buy as *bona fide* purchasers at a constable sale, under such circumstances, are liable as wrong-doers, without the necessity of a demand by the plaintiff. The defendant, if not the officer, had a right to rely upon the omission of the plaintiff to assert her claim of exemption. He was not bound to prove title in her brother, Dr. Frazer, or any one else, to defeat her recovery. It was for her, the plaintiff, to prove title in herself, not only, but to prove all the other facts necessary to establish her right to the exemption. The burden was upon her (*Tuttle* v. *Buck*, 41 Barb., 417; *Griffin* v. *Sutherland*, 14 id., 456); and it was held in *Smith* v. *Hill* (22 id., 661), that a party, being present at a sheriff sale, and knowing the circumstances under which the property was sold, and making no objection at the time, or claim, waived his claim, and was estopped from making it afterward. (See, also, *Lounsbury* v. *Depew*, 28 Barb., 47, 48; and *Hawley* v. *Griswold*, 42 id., and cases cited, on page 23.) The maxim is wise, that a party who is silent when he ought to speak shall not be permitted to speak afterward to the prejudice of those who have been induced to act upon such omission to speak. Roberts, in his treatise on fraud, 130, says " there is a *negative* fraud in imposing a false apprehension on another by silence, where silence is treacherously expressive." (See cases cited in *Thompson* v. *Blanchard*, 4 N. Y., 303; *Brewster* v. *Baker*, 16 Barb., 613, to the same effect.)

But I think the learned judge was also in error in his charge that not only the officer who levied, but all who claimed title through him, were liable in such an action with-

out previous demand, if on the trial it is proved that the property levied on was exempt. By a long and well-established rule, the distinction exists even between the officer and a *bona fide* purchaser at public sale. The defendant in this case was such a purchaser. In *Storm* v. *Livingstone* (6 Johns., 44), the plaintiff's goods were wrongfully taken by a constable on execution, and sold to the defendant. The court said the defendant came lawfully by the horse by the purchase at the constable sale; and there having been no sufficient demand of the horse before suit brought, it was held the action would not lie. I think this case (says the judge) stands on a fair foundation. A man who innocently purchases property, supposing he should acquire a good title, ought not to be subjected to an action until he has had an opportunity to restore the goods to the true owner. This case was cited with approbation by BRONSON J., in *Barrett* v. *Warren* (3 Hill, 351), and the principle reasserted in *Millspaugh* v. *Mitchell* (8 Barb., 335), by BROWN, J. In *Pierce* v. *Van Dyke* (6 Hill, 614), BRONSON, J., again repeats what was said in *Barrett* v. *Warren, supra,* "that a demand was necessary before an action could be maintained against one who had purchased goods *bona fide.* But this case is still stronger against the plaintiff. Here the constable did not wrongfully take, but rightfully took the property. The defendant was not only a *bona fide* purchaser, but he bought in the presence of the plaintiff, whose silence as to the claim of exemption he had a right to regard as the absence of such right, or the waiver of it if she had the right. Nay, more, upon the principle laid down in *Paul* v. *Hadley* (23 Barb., 521), she was guilty of fraudulent concealment, if she intended afterward to claim exemption, and the law allows no person to take advantage of their own fraud. In the case of *Fuller* v. *Lewis* (13 How. Pr. R., 220), it was held that demand and refusal are facts material to the maintenance of such an action, as it was said the defendant is entitled to have an opportunity of considering whether he should restore the property to the plaintiff. These objections to the

charge were repeated at the end, with request to charge otherwise, which was refused and exceptions fully taken covering the points.

But there is another portion of the charge fully excepted to, to which I cannot lend my assent, either as sound law or as a sound principle of ethics. The case shows that the plaintiff, at and before the sale, and in the presence of the purchaser and bidders at the sale, said she would not *lie;* the property belonged to her brother. On the trial she swore it was her own. On the subject of this inconsistency, and as to this falsehood, on the one occasion or the other, the learned judge charged the jury as follows : "If the jury consider that the woman, *unadvised,* resorted to that course in order to carry her boat along, and not intending to lie about it, they have a right to say so." This may be "a charity that covers a multitude of sins," but I don't think a precedent can be found to sustain it. The law knows no distinction between an unadvised woman and an unadvised man, and the judgment in the moral scale is the same with each. A falsehood or fraud by the one is equal to the same fraud or falsehood by the other, and the estoppel and waiver created by the assertion of falsehood or by treacherous or expressive silence in the one case, differs not from the other. And the hypothesis given to the jury, that they had a right to find she did not intend to lie when she openly declared that in what she stated she would not lie, and afterward having sworn that when she said so in effect that she did lie, is giving the jury to understand that they may exercise a looseness in morals and disregard of truth in weighing testimony that appears to me to be dangerous to the cause of justice. I should be for reversing the judgment upon this ground alone.

The plaintiff failed on the trial, by proof, to bring herself within the law of exemption, but no objection was taken or motion made to nonsuit on that ground, and we must assume that no error was committed in that regard.

There is another question that arose on the trial which the defendant's counsel seems to regard as perhaps the most

material in the case which we are called upon to review. This is the question as to the rule of damages allowed by the judge and adopted by the jury. The action was, under the Code, a claim for personal property which was taken by the plaintiff from the defendant on security given to the sheriff and redelivered to the defendant upon his giving the required security for its return; upon this state of a case what is the rule of damages to which the plaintiff is entitled? The defendant claimed it to be the value of the property with interest from the time of taking, and asked the judge so to charge, which he refused. The rule laid down by the learned judge was this: In addition to the actual damages for detention, I hold that the plaintiff is entitled to recover for the use of this horse. This is a question upon which there is some conflict in the cases, though I think it may now properly be said the conflict arises chiefly from the misapplication of one principle to cases that differ in character. In a case of replevin in *Brizsee* v. *Maybee* (21 Wend., 144), there was judgment *de retorno*, and a writ of inquiry to assess the damages. Cowen J., said, " they were ordinarily as in trespass *de bonis* or trover, the interest upon the value of the goods when taken from the time of the taking to the day of assessing damages." He also said, " that there were exceptions to the rule as where it appears in an action of trespass that the goods were taken tortiously and without color of right." He added " where the writ of replevin has obviously been perverted to the purpose of a willful injury with a full consciousness in the party that he has no claim, the jury may perhaps assess smart money as they might for a willful and malicious trespass." He says, "there was no evidence that the wrong done by the replevin in question was anything more than the honest assertion of a supposed claim." "And to go even thus far would be dangerous unless a malicious replevin be considered an exception to the rule." "It is enough to say that the damages found were much too high upon any principle which the jury were authorized to adopt." The inquisition was set aside.

I have extracted at some length from this case, because it seems to be a leading one and stands upon a sound basis for its support.   I know of no case directly in conflict with this principle, and no case overruling it.   There are other cases which show other exceptions to the rules of the value of the property and interest.   Such is the case of *Young* v. *Willett,* reported in 8 Bosworth, 486, 487.   Judge BOSWORTH charged the jury, that if they found a verdict for the plaintiff, it would be their duty to find the damages which the plaintiff had sustained, which would include the interest on the value of the goods as assessed by the jury from the time of the commencement of the action.   And also specially the amount of the depreciation of the goods in value, if any was proven by the evidence. This charge was sustained at general term as sound.   In the case of *Suydam* v. *Jenkins* (3 Sand., Sup'r C. R., 621), which was an action of replevin, Judge DUER says, " whatever may be the form of action in which reparation is sought, the sum due to him for compensation must be the same whether he is the plaintiff in trespass or trover, or defendant in replevin.   There can be no variance in the amount of an indemnity; and if its criterion can be fixed, any departure from the standard which it establishes must be capricious and arbitrary, and must involve more or less of injustice to one or other of the parties to the injury."   This is an answer to the point of the plaintiff that there is a broad distinction between the measure of damages in actions of trover and replevin, to which he cited an Illinois case.   Judge DUER in his most elabo- rate opinion in the case last cited, while he acknowledges there are exceptions to the rule, and, among others, when force or fraud has been resorted to, and when vindictive damages may be given, says, page 626: " That in trover the general rule, both in England and in the United States, undoubtedly is, that the *current or market value of the property, at the time of the conversion, with interest from that time until the trial, is* the measure of damages, and cites authorities too numerous to be repeated; and, after a review of all the cases in trover, in trespass *de*

*bonis asportatis* and replevin, the rule of damages is the same except in cases which authorize exemplary damages. The case before us contains no features *to authorize exemplary damages.* I am, therefore, of opinion that the rule which the learned judge laid down, first, the value of the property, in addition, the actual damages for detention, and then for the use of the horse, *was erroneous.* The rule of damages is a question of law. For these reasons I think the judgment should be reversed and a new trial ordered, costs to abide the event.

Judgment reversed.