GEORGE CLARK, APPELLANT, v. FREDERICK G. WEAVER, SHERIFF, ETC., AND ICHABOD BLASIER, RESPONDENTS.

*Receipt for property levied on by a sheriff — when receiptor not estopped from claiming title thereto — when the agreement upon which the receipt was given may be shown by parol evidence.*

One Blasier having recovered a judgment against Alonzo Clark, the father of the plaintiff, directed the sheriff to levy upon certain cows, which belonged to the plaintiff and not to the father. At the time of making the levy, the sheriff was

informed by the plaintiff that the cows belonged to him, but as he had been indemnified by Blasier he insisted on holding his levy. Subsequently the plaintiff gave a receipt to the sheriff for the cows, upon his assurance that it would not have the effect to prejudice his rights, and that no advantage would be taken of it if the cows were present when wanted for sale.

Thereafter the sheriff and Blasier came to the farm to sell the cows, and were informed by the plaintiff that the cows were in the barn on the said premises. The sheriff then returned the receipt to the plaintiff, and having turned one o the cows loose, commenced to sell it, when the coroner served upon him the papers in this action, brought to recover possession of the cows and damages for their detention.

*Held,* that parol evidence of the assurances made by the sheriff at the time of the giving of the receipt, and of the return of the receipt to the plaintiff, was admissible.

That the plaintiff was not, under the circumstances of the case, estopped by the giving of the receipt to the sheriff from claiming title to the cows.

APPEAL from a judgment dismissing the complaint, entered upon the report of a referee. This action was brought to recover the possession of seven cows, and damages for the detention thereof.

The referee found that on March 6, 1876, one Blasier recovered a judgment against Alonzo Clark, the father of the plaintiff. That some time in March, 1877, an execution was duly issued on said judgment and delivered to one Cornwell, a deputy sheriff, to execute, in pursuance of which he levied in March or April, 1877, upon seven cows, then the property of the plaintiff in this action; that said cows had formerly been the property of said Alonzo Clark, the father of the plaintiff, but at the time of such levy said cows were owned by and were the property of this plaintiff.

That at the time of such levy by said deputy sheriff, he was informed by the plaintiff that the cows were the property of this plaintiff; that notwithstanding thereof said deputy sheriff threatened to remove said cows, unless a receipt was given for the same; that plaintiff thereupon executed and delivered to him the following receipt, and thereupon the cows were then and there left by said deputy and not removed:

" I hereby acknowledge that I have received the above described property, so levied upon by the sheriff of Oneida county, from said sheriff, and hereby promise and undertake to return the same

and every part thereof to the said sheriff, on demand, or pay the above judgment and sheriff's fees.

"Dated, Western, *March* 12, 1877.

"GEO. E. CLARK."

That in a week or so thereafter, the deputy sheriff Blasier, and E. J. Lawton, coroner of Oneida county, were at the place of plaintiff where said cows were ; that the said deputy and Blasier were there with a view to sell said cows on said execution ; that this plaintiff then and there informed the said deputy that all the cows were in the barn there on the premises where the parties were ; that the said deputy did not demand said cows on said receipt, nor did the said plaintiff personally deliver the cows to said deputy, except to state that the cows were there ; that said deputy turned one of the cows out of the barn and was proceeding to sell the same by virtue of said execution, when said coroner Lawton then and there served the papers for the commencement of this action on both defendants ; and no further or other sale of said cows took place at that time.

That defendant Blasier had previously indemnified said sheriff against any damages which should result to him because of his selling said property under the execution.

The referee further found " that, on the trial of this action, the plaintiff offered to show, as a matter of fact, that at the time of giving said receipt, said plaintiff declined at first to sign the same as it might prejudice his claims or rights, and that he was then and there assured by such deputy that it should not have any such effect, and that no advantage whatever should be taken of it if the cows were present when wanted for sale ; that on the faith of such assurance this plaintiff signed the same ; that the deputy sheriff on the day of sale, and before this suit was brought, gave back to the plaintiff the receipt ; all of which offers of plaintiff the referee rejected under objection by defendants, and excluded the evidence."

And as conclusion of law, he found that by the receipt given, the plaintiff was estopped, as against these defendants, from setting up or claiming in this action that the said property was his.

*James Parks*, for the appellant.

*Joseph I. Sayles*, for the respondents.

Hardin, J.:

The referee has found that in April, 1877, the sheriff made a levy on an execution in favor of Blasier, and against one Alonzo Clark, father of plaintiff, upon seven cows "then and there the property *of the plaintiff in this action.*" (2.) Also that the sheriff *was informed by the plaintiff the cows were the property of this plaintiff.* (3.) That "notwithstanding thereof the sheriff threatened to remove said cows unless a receiptor was given for the same, that plaintiff thereupon signed and executed and delivered to the sheriff the receipt for them; thereupon the cows were then and there left by the sheriff and not removed."

The receipt executed 12th of March, 1877, acknowledged the receipt of the property "so levied upon by the sheriff, from the sheriff, 'and stated' and hereby promise and undertake to return the same and every part thereof to the said sheriff, on *demand or pay the above* judgment and sheriff fees."

He also finds, viz.: "That in a week or so thereafter the said deputy sheriff, said Blasier, and E. J. Lawton, coroner of Oneida county, were at the place of plaintiff's where said cows were; the said deputy and Blasier were there with a view to sell said cows on said execution; that this plaintiff and there informed the said deputy all the cows *were in the barn*, then on the premises where the parties were; that said deputy did not demand the cows on said receipt. *Nor* "did the said plaintiff personally deliver the cows to said deputy, except to *state the cows were there;* that said deputy turned one of the cows out of the barn, and was proceeding to sell the same by virtue of said execution, when said coroner Lawton then and there served the papers for the commencement of this action on both defendants, and no further or other sale of said cows took place at that time."

It appears by the case that the plaintiff offered to prove that the deputy sheriff on the day of sale, and before this suit was brought, gave back to the plaintiff the *receipt.* This evidence was objected to by the defendants as incompetent, improper and immaterial.

The referee sustained the objections and excluded the evidence,

holding that the deputy sheriff could not give up the receipt to the prejudice of the plaintiff in the execution and judgment, and the plaintiff had an exception.

The sheriff had asked if the cows were there, and was told, as was the fact, that they were, before the receipt was demanded and before it was delivered back as stated in the offer. There was also an offer to show that plaintiff declined at first to sign the receipt, and " that on being then and there assured by such deputy that it would not have the effect to prejudice his rights, * * * and that no advantage whatever should be taken of it if the cows were present when wanted for sale — that on the faith of such assurance the plaintiff signed the same." It was excluded; the plaintiff excepted.

The referee found, as a conclusion of law, " that by the receipt the plaintiff is estopped as against these defendants from setting up or claiming in this action the said property was his," and, thereupon, he dismissed the plaintiff's complaint.

It appeared that the execution creditor, Blasier, had indemnified the sheriff, and was aiding and directing the levy and proposed sale of the property.

The learned referee states that he was influenced in his decision of this case by the cases which he cites. The first is *Dezell* v. *Odell* (3 Hill, 217).

In that case a levy had been made, a receipt given to the officer, the property was not produced and a suit was brought, and the receiptor sought to defend upon *an* averment *and proof* that *he owned the property*. The court held that the defendant, the receiptor, was estopped, the majority of the court being of the opinion that the principle of *estoppel in pais* was applicable.

Judge Cowen, who delivered the prevailing opinion in that case, said : " It may be conceded that had the defendant's claim been interposed at the time of the levy, *and he had* signed the receipt *in terms*, without prejudice to his rights, the question would have been open. " The creditor would have *been put* upon his guard and enabled to seek for *other* property on finding that the debtor had no title to that in question." He then proceeds to state that the conduct of the receiptor had been such as to influence the creditor and the sheriff, and that in the absence of fraud or gross

mistake shown by defendant to have been practiced, there was an estoppel, and he adds, " *the officer* was, when he came to sell, for the first time apprised that *the defendant had title.*"

The quotations made indicate how essentially the case differed from the one before us.

The next case to which the referee refers to support his decision is that of the *People* v. *Reeder* (25 N. Y., 303).

That was a case where the sheriff had taken a·receipt for goods and demanded them of the receiptor, and brought his action and obtained a judgment, and it was held that when the execution creditor brought an action against the sheriff, he was estopped from setting up that the goods did not belong to the judgment-debtor.

The sheriff had the benefit of an estoppel against the receiptor and obtained his judgment, and, therefore, was liable for the execution debt. That case does not aid the defendant here ; for the receipt contained an *admission* that the property belonged to the judgment-debtor. (See opinion of DENIO, J., 303.)

The next case is that of *Cornell* v. *Dakin* (38 N. Y., 253). Opinion by DWIGHT, J.

The sheriff took a receipt in that case and made a demand for the property, and there was a refusal to deliver, and it was held the receiptor was liable, and that he could not in such action set up title to the property in a third person. He had contracted to return it, his compact was founded on a sufficient consideration, viz., the surrender of the property, and that " the defendant must be supposed to have made it voluntarily, *with* his eyes open, with full knowledge of its meaning and effect." His covenant was absolute and positive to return the property or to pay the judgment. Nothing but the act of God, or of the public enemy, could discharge his liability upon it.

In *Diossy* v. *Morgan* (17 Alb. Law Jour., 491) the Court of Appeals held that a party who had as·defendant given a replevin undertaking, which recited that the property had been taken from his possession, and asked a re-delivery, was estopped from setting up that the property had not been in his possession.

The admission in that case was one as to the possession, and only from denying the possession so admitted was the estoppel.

In the case before us we find facts and features which distinguish it from any of those alluded to.

(1.) The plaintiff gave notice at the time of the levy that he owned the property.

(2.) The sheriff assured the party, who was asked to give a receipt, that it would not *have the effect to prejudice his claim* to or ownership of the property.

(3.) There was an " *assurance* that *no advantage whatever should be taken of it, if the cows were present when wanted for sale."*

(4.) The cows were present, were returned to the officer, he resumed possession of the cows, and thereupon the receipt lost its force as a covenant for return or for payment of the judgment.

(5.) It was spent, and as it was taken by the officer for the purpose of assuring the re-possession by him of the property, and he had regained possession, it was not a covenant that the creditor was any longer interested in.

(6.) That as there was no force left in it the sheriff had a right to, and properly returned it to the plaintiff.

(7.) The property being taken by the sheriff, and the sale opened, he committed a fresh trespass upon the property, he again became a wrongful detainer of the property, the title to which was in the plaintiff.

(8.) Obviously, under the circumstances of this case, there was *no intent to stipulate the title* from the plaintiff into the judgment-debtor, nor a special title through him into the sheriff.

We should not, therefore, hold that the plaintiff was estopped from asserting title to his property in this action against the sheriff and creditor, who have no title except such as might be made through their debtor.

The fact is found, that at the time of the levy the plaintiff had the title and the judgment-debtor did not, and as we have seen the sheriff knew it, and, indeed, admitted it, and then gave an assurance that " the receipt should not have any such effect " as he now seeks to give it.

In *Johns* v. *Church* (12 Pickering, 557) it was held that after the return of the goods the recciptor might have his action, and although the receipt would be strong evidence against him, yet it was not an estoppel.

Here the sheriff was not misled ; he asserted title to be in the debtor, and the plaintiff denied it, and the sheriff said yes, I admit that he has no title, but I am directed to levy, and on these cows, and if you will have them here at the day of sale I will not take the possession of them from you (and the plaintiff so stipulates, but he gave no stipulation as to title), and the cows are on hand at the day of sale, and the sheriff resumes possession and commences his sale.

True, the plaintiff had recognized the sheriff's pretended levy on the debtor's alleged interest in the goods, but did not admit that the debtor had any interest in the goods, nor that he had not title to them, nor did he influence the acts of the sheriff in such a way as to divest himself of the title.

Upon the trial of this cause the issue was presented for determination as to the title to the cows; the referee finds it was at the time of the levy in the plaintiff, and because he had stipulated that the cows should be in a certain place on a certain day, that, therefore, the plaintiff lost the title to the cows, although he had asserted the truth as to the title at the time of the levy, and never admitted or stated to the contrary. In the many cases stating the doctrines of *estoppel in pais*, it is laid down that there must be acts or admissions which have influenced the act of a party, and that the party must be prejudiced by the acts and admissions which are subsequently sought to be gainsaid. (*Lawrence* v. *Brown*, 1 Seld., 401; *Carpenter* v. *Stilwell*, 12 Barb., 128.) Estoppels which would exclude the truth must be clearly made out and strictly construed. (*Lounsbury* v. *Depew*, 28 Barb., 48.) The title in the cows was asserted to be in the plaintiff, the levy was made notwithstanding it, and the sheriff believed the title to be in the plaintiff; he asked for a receipt as to the possession, and assured the plaintiff it should not be used to his prejudice ; the cows were at the place according to the tenor of the receipt ; it was given up ; the title still was claimed by the plaintiff ; the sheriff resumed possession and refused to desist from the sale ; he wrongfully retained possession ; and as the plaintiff had the legal title he was entitled to the possession, and by no act or admission had he barred himself of the right to assert his title, and with it the incidental right of possession.

The learned referee fell into an error in concluding that the plaintiff was estopped from " setting up or claiming in this action the said property was his." The sheriff admitted and stated the receipt should not be used to the disadvantage of the plaintiff. If we allow the use sought to be made of it by the defendants, it will be greatly to the disadvantage of the plaintiff. The sheriff " *in good conscience and honest dealing ought not to be permitted to gainsay* " his admission. (*Welland Canal Co.* v. *Hathaway*, 8 Wend., 483; *Bookstaver* v. *Jayne*, 60 N. Y., 146.)

In *Howe* v. *Cole* (12 American R., 111), the plaintiff had stated that the property belonged to another, and he was held estopped from claiming title in it himself. That case does not aid the respondent here.

When the receipt had been surrendered, the cows delivered up to the sheriff, and the plaintiff demanded them, it was an open question as to who owned the property. There had been no such admission of the plaintiff as indicated that he had no title to the property, upon which the sheriff had rightfully acted and reposed, his conduct had not been influenced by any admission of the plaintiff in respect to the title ; he was moved by the antecedent direction of the judgment-creditor who had directed him to trespass upon the rights of the plaintiff, and he followed the direction, receiving notice that the plaintiff had the title, admitting himself that it was true, asserting that he would remove the goods unless the receipt was given, stating that if it was. given it should not disadvantage the plaintiff, if the property was on hand the day of the sale, and it was there when asked for, the receipt surrendered, and the title still continued in the plaintiff, and when the next wrong was perpetrated, the sheriff being but as a stranger to this property, the plaintiff had the right to assert his title and protect it from any further wrong from the sheriff and the judgment-creditor.

Hence this action based upon the plaintiff's title, and the right of possession which became his the moment the receipt was returned to him. If this suit had been brought before the expiration of the time stated in the receipt for the return of the property, and before it was surrendered up to the plaintiff, and with no assurance given by the sheriff, at the time it was taken, a different question would have arisen.

Upon the facts of the case the result which the referee reached was erroneous, and his decision holding the plaintiff estopped and dismissing the plaintiff's complaint ought, in my judgment, to be reversed, and a new trial ordered before another referee, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

Juagment reversea, and a new trial ordered before another referee, with costs to abide the event.