JOHN E. BLISS, Appellant, v. CHARLES K. LAWRENCE, Respondent.

JOHN E. BLISS, Appellant, v. GEORGE H. GARDNER, Respondent.

An assignment by a public officer of the future salary of his office is contrary to public policy and is void.

The English cases upon the subject collated.

*Brackett* v. *Blake* (7 Metc., 335), *Mulhall* v. *Quinn* (1 Gray, 105) and *Macomber* v. *Doane* (2 Allen, 541) distinguished; *State Bank* v. *Hastings* (15 Wis., 78) disapproved.

(Argued April 17, 1874; decided October 6, 1874.)

THESE are appeals from judgments of the General Term of the Court of Common Pleas for the city and county of New York, affirming judgments of District Courts of said city dismissing the complaint in each case.

The complaint in each case alleged, and the evidence established, that the defendant was a clerk in the United States treasury department, in New York city, and that he sold and assigned to plaintiff a month's salary in advance at a discount of ten per cent; that the defendant, when the salary became due, collected the same and converted it to his own use.

*James Emott* and *Samuel Hand* for the appellant. Future wages or compensation is a possibility coupled with an interest and is assignable. (*Field* v. *The Mayor*, etc., 2 Seld., 179;

*Lannon* v. *Smith*, 7 Gray, 150 ; *Emery* v. *Lawrence*, 8 Cush., 157 ; *Augier* v. *N. Y. P. Co.*, 39 Conn., 536 ; *Hartley* v. *Topley*, 2 Gray; 565 ; *Ward* v. *Forrest*, 24 Ves., 20.) An assignment by a public officer of his salary to become due is valid. (*Crouch* v. *Martin*, 2 Vern., 594 ; *Macomber* v. *Doane*, 2 Allen, 541 ; *Brackett* v. *Blake*, 7 Metc., 335 ; *Aston* v. *Gwinnell*, 3 Y. & J., 148 ; *Ex parte Butler*, 1 Atk., 210 ; *Mulhall* v. *Quinn*, 1 Gray, 105 ; *Herrington* v. *Klopugge*, 2 B. & B., 678; *Stewart* v. *Tucker*, 2 B. P. R., 1837 ; *State Bk.* v. *Hastings*, 15 Wis., 75 ; *Galeford* v. *De Cardwelle*, 2 Salk., 466 ; *Storry* v. *Clifton*, 9 C. B. ; *Homer* v. *Wood*, 23 N. Y., 350 ; *Carver* v. *Cregue*, 46 Barb., 507.) Trover will lie for the conversion of money, although not specifically identified. (*Donohue* v. *Henry*, 4 E. D. Smith, 162 ; *Green* v. *Hostetter*, 37 N. Y., 90 ; *G. T. R.* v. *Edward*, 56 Barb., 418 ; *Norton* v. *Kidder*, 54 Md., 189 ; *Draycott* v. *Picott*, Cro. Eliz., 818 ; *Rinaston* v. *Moore*, Cro. Chas., 89 ; *Dudley* v. *Graves*, 20 N. Y., 76 ; *James* v. *Adams*, 22 How., 409.) An agent may be guilty of conversion, and plaintiff may claim through assignment made before the property came to the hands of the assignor. (*Lannon* v. *Smith*, 7 Gray, 150 ; *Kennedy* v. *Strong*, 14 J. R., 128 ; *Clowes* v. *Hawley*, 12 id., 484 ; *Ringo* v. *Field*, 1 Gray [Ark.], 43 ; *Berlly* v. *Taylor*, 5 Hill, 577 ; *McGinn* v. *Worden*, 3 E. D. Smith, 355 ; *Wright* v. *Baldwin*, 18 N. Y., 428 ; *Solomon* v. *Waaz*, 2 Hill, 179 ; *Ward* v. *Forrest*, 20 How., 465.) It did not appear that the assignment worked any mischief affecting the body politic. (*Richard* v. *Quintard*, 51 N. Y., 637.) The assignment was not of a "claim on the United States" prohibited by act of Congress. (10 U. S. Stat. at Large, 170 ; *Olcott* v. *Wood*, 4 Kern., 32 ; *Kneedler* v. *Steinburgh*, 10 How., 67 ; *Jackson* v. *Losee*, 4 Sandf. Ch., 381 ; *Laurence* v. *Miller*, 2 Comst., 245 ; *Saddleburn* v. *Ames*, 32 How., 380.)

*L. I. Lansing* and *Moses Ely* for the respondent. The assignment was against public policy and void. (2 Story

Eq., § 1040; 1 Pars. on Con., 194; *Arbuckle* v. *Cowtan*, 3 Bos. & Pul., 328; *Wells* v. *Foster*, 8 M. & W., 149; *Hill* v. *Paul*, 8 C. & F., 295, 307; *Palmer* v. *Bate*, 2 B. & B., 673; *Davis* v. *Duke of M.*, 1 Swanst., 79; *Stone* v. *Leddendale*, 2 Anstr., 533; *Barwick* v. *Reed*, 1 H. Blk., 627.) The alleged transfer came within the provisions of the act of Congress. (10 U. S. Stat. at Large, 170.) The transfer was of a mere contingent possibility. Such an interest is not assignable. (*Cooper* v. *Reilly*, 2 Sim., 560; 2 Story Eq., § 1040; *Flarty* v. *Oldam*, 37 T. R., 681; *King* v. *Lord Comrs.*, 4 A. & E., 976, 984; Long on Sales, 3; 2 Kent's Com., 641, 642; *Emery* v. *Lawrence*, 8 Cush., 151; *Mulhall* v. *Quinn*, 1 Gray, 105; *Munsell* v. *Lewis*, 4 Hill, 639.) Plaintiff had no such title to the money received by defendant as to give him a right of action for conversion. (1 Pars. on Con., 524; *Black* v. *Webb*, 20 Ohio, 324; *Stanton* v. *Small*, 3 Sandf., 230; *Otis* v. *Sill*, 8 Barb., 113; *Rogers* v. *Hosack's Exrs.*, 18 Wend., 319; *People* v. *Tioga C. P.*, 19 Wend., 79; *Deering* v. *Farrington*, 3 Keb., 304; *Field* v. *Mayor*, 6 N. Y., 187.) The transaction was usurious. (*Colton* v. *Dunham*, 2 P. C., 273; *Dry Dock Bk.* v. *Am. Life Ins. and Trust Co.*, 3 N. Y., 344; *Schermerhorn* v. *Tallman*, 14 id., 120; *Elwell* v. *Chamberlain*, 31 id., 622.)

JOHNSON, J. The controlling question in these cases is that of the lawfulness of an assignment, by way of anticipation, of the salary to become due to a public officer. The particular cases presented are of assignments of a month's salary in advance. But if these can be sustained in law, then such assignments may cover the whole period of possible service. In the particular cases before us, the claims to a month's salary seem to have been sold at a discount of about ten per cent. While this presents no question of usury (since it was a sale and not a loan for which the parties were dealing), it does present a quite glaring instance and example of the consequences likely to follow the establishment of the validity of such transfers, and thus illustrates one at least of the

grounds on which the alleged rule of public policy rests, by which such transfers are forbidden. The public service is protected by protecting those engaged in performing public duties; and this, not upon the ground of their private interest, but upon that of the necessity of securing the efficiency of the public service, by seeing to it that the funds provided for its maintenance should be received by those who are to perform the work, at such periods as the law has appointed for their payment.

It is argued that a public officer may better submit to a loss, in order to get his pay into his hands in advance, than deal on credit for his necessary expenses. This may be true in fact, in individual instances, and yet may in general not be in accordance with the fact. Salaries are, by law, payable after work is performed and not before, and while this remains the law, it must be presumed to be a wise regulation, and necessary, in the view of the law-makers, to the efficiency of the public service. The contrary rule would permit the public service to be undermined by the assignment to strangers of all the funds appropriated to salaries. It is true that, in respect to officers removable at will, this evil could in some measure be limited by their removal when they were found assigning their salaries; but this is only a partial remedy, for there would still be no means of preventing the continued recurrence of the same difficulty. If such assignments are allowed, then the assignees, by notice to the government, would on ordinary principles be entitled to receive pay directly and to take the place of their assignors in respect to the emoluments, leaving the duties as a barren charge to be borne by the assignors. It does not need much reflection or observation to understand that such a condition of things could not fail to produce results disastrous to the efficiency of the public service.

Some misapprehension as to the doctrine involved seems to have arisen from the fact that the modern adjudged cases have often related to the pay of half-pay army officers, which in part is given as a compensation for past services and in

part with a view to future services. Upon a review of the English cases, it will appear that the general proposition is, upon authority, unquestionable, that salary for continuing services could not be assigned; while a pension or compensation for past services might be assigned. The doubt, and the only doubt, in the case of half-pay officers was to which class they were to be taken to belong. It was decided that, inasmuch as their pay was in part in view of future service, it was unassignable. Similar questions have arisen in respect to persons not strictly public officers, but the principle before stated has, in the courts of England, been adhered to firmly. (*Flarty* v. *Odlam*, 3 T. R., 681; *Stone* v. *Lidderdale*, 2 Anst., 233; *Davis* v. *Marlboro*, 1 Swanst., 79; *Lidderdale* v. *Montrose*, 4 T. R., 248; *Barwick* v. *Read*, 1 H. Bl., 627; *Arbuckle* v. *Cowhan*, 3 Bos. & P., 328; *Wells* v. *Foster*, 8 M. & W., 149; Story Eq. Jur., § 1040, *d.*, etc.; 1 Parsons on Cont., 194.) These cases and writers sustain the proposition above set forth and show the settled state of the English law upon the subject. Some other cases are so pertinent to the general discussion as to deserve to be stated more at length, especially as they are not so accessible as those before referred to. Among them the judgment of Lord BROUGHAM, in the House of Lords, in *Hunter* v. *Gardner* (6 Wilson & Shaw, 618), decided in 1831, gives an admirable summary of the state of the English law upon the subject. The case was a Scotch appeal, in which the Scotch court had approved, under the law of that country, a partial transfer of the salary of a public officer. The particular judgment was affirmed without deciding what the law of Scotland was upon the subject. In his judgment Lord BROUGHAM said: "The court seem not to have scrutinized very nicely whether, from the nature of the subject-matter, namely, the half-pay or the full pay of an officer or a minister's stipend, or, in the present case, the salary of an officer employed under government and in the execution of an important public trust, an assignment can validly operate upon and affect those particular rights; but they have nevertheless assumed to deal with them, and

have directed that a certain proportion of them shall be assigned on the condition of granting the benefit of the *cessio bonorum.* Those cases undoubtedly could not have occurred in this country. I may refer to the well known case of *Flarty* v. *Odlam* (3 T. R., 681), which, from its importance, was the subject of much discussion, it being the first case in which it was held that the half-pay of an officer was not the subject of assignment; and it was followed in *Lidderdale* v. *The Duke of Montrose,* in 4 Term Reports, where the doctrine laid down was made the subject of further discussion, and the court adhered to their former view, that the half-pay was free from attachment; so that neither is a man bound to put it into the schedule of his assets, nor does the general assignment to the provisional assignee transfer it, nor would a bargain and sale to the assignees under a commission of bankrupt pass it out of the bankrupt; it is unassignable, and incapable of being affected by any of those modes of proceeding. The same doctrine was laid down with respect to the profits of a living in the case of *Arbuckle* v. *Cowhan,* the judgment in which has been very much considered in Westminster Hall, and like most of the judgments of that most able and learned lawyer, Lord ALVANLEY, has given great satisfaction to the courts and the profession. In the report of that case, your lordships, will find laid down the .general principle, though, perhaps, not worked out in these words, that all such profits as a man receives in respect to the performance of a public duty are, from their very nature, exempt from attachment and incapable of assignment, inasmuch as it would be inconsistent with the nature of those profits that he who had not been trusted, or he who had not been employed to do the duty, should nevertheless receive the emolument and reward. Lord ALVANLEY quotes *Flarty* v. *Odlam* and *Lidderdale* v. *Montrose,* and in illustrating the principle on which a parson's emoluments are not assignable, he does not confine his observations to the particular case of half-pay officers or the case of a parson's emoluments, but he makes the observation in all its generality, as appli-

cable to every case of a public office and the emoluments of that office. The first case (1 H. Bl., 627) decided by the Court of Common Pleas, the case of *Barwick* v. *Read*, clearly recognizes the principle.    \*    \*    \*    In this case, as well as the other case of *Archbuckle* v. *Cowhan*, it was perfectly clearly held by the court, that, in all such cases, one man could not claim to receive, by assignment or attachment, emoluments which belonged to another deemed to be capable of performing the duties appended to those emoluments, but which duties could not be performed by the assignee; and there was an old case referred to in *Barwick* v. *Read*, and a curious case in Dyer, in which, so long ago as the reign of Elizabeth, the question appears to have been disposed of by a decision now undisputed, and now referred to in Westminster Hall.    \*    \*    \*    All these cases lay down this principle, which is perfectly undeniable, that neither attachment nor assignment is applicable to such a case."

Other cases to the same effect, of later date, are likewise noteworthy.

In *Hill* v. *Paul* (8 Clark & Finn., 307), decided in 1842, Lord Chancellor LYNDHURST, speaking of the legality of assigning the future emoluments of an office in Scotland says: " That such an assignment would be illegal in England there can be no doubt. *Palmer* v. *Bate* (2 Brod. & Bing., 673) is directly applicable to this case. And in *Davis* v. *Marlborough* (1 Swanst., 79) there is the observation of Lord ELDON already cited, which seems to me quite in point and which lays down the true rule and the distinction to be observed in these cases, and to which for that reason I refer as showing what is the law of England on this subject." What Lord ELDON said in the case referred to was: " A pension for past services may be aliened; but a pension for supporting the grantee in the performance of future duties is inalienable." And in *Flarty* v. *Odlam* (4 T. R., 248) the court say: " It might as well be contended that the salaries of the judges which are granted to support the dignity of the State and the administration of justice may be assigned."

In *Arbuthnot* v. *Norton* (5 Moore Priv. Coun. Cases, 230), decided in 1846, the question was whether an Indian judge could assign a contingent sum to which on his death within six months after his arrival in India his representative would be entitled by law, and it was held that such an assignment was not against public policy and would in equity transfer the right to the fund. In the course of the judgment, given by Dr. Lushington, he says : " We do not in the slightest degree controvert any of the doctrines, whereupon the decisions have been founded against the assignment of salaries by persons filling public offices ; on the contrary we acknowledge the soundness of the principles which govern those cases, but we think that this case does not fall within any of these principles : and we think so because this is not a sum of money which at any time during the life of Sir John Norton could possibly have been appropriated to his use or for his benefit, for the purpose of sustaining with decorum and propriety the high rank in life in which he was placed in India. We do not see how any of the evils which are generally supposed would result from the assignment of salary, could in the slightest degree have resulted from the assignment of this sum, inasmuch as during his lifetime his personal means would in no respect whatever have been diminished, but remain exactly in the same state as they were."

In *Liverpool* v. *Wright* (28 L. J. [N. S.] [Ch.], 871, A. D. 1859), in which the question related to the alienability of the fees of the office of a clerk of the peace, Wood, V. C., after disposing of another question says : " Then there is a second ground of public policy, for which the case of *Palmer* v. *Vaughan* (3 Swanst., 173) is the leading authority, which is this : That independently of any corrupt bargain with the appointor, nobody can deal with the fees of a person who holds an office of this description, because the law presumes, with reference to an office of trust, that he requires the payment which the law has assigned to him for the purpose of upholding the dignity and performing properly the duties of that office, and therefore it will not allow him to part with

any portion of those fees either to the appointor or to anybody else. He is not allowed to charge or incumber them. That was the case of *Parsons* v. *Thompson* (1 H. Bl., 322). Any attempt to assign any portion of the fees of his office is illegal on the ground of public policy, and held therefore to be void."

In respect to American authority we have been referred to *Brackett* v. *Blake* (7 Metcalf, 335), *Mulhall* v. *Quinn* (1 Gray, 105) and *Macomber* v. *Doane* (2 Allen, 541), as conflicting with the views we have expressed. An examination of these cases shows that the point of public policy was not considered by the court in either of them, but that the question was regarded as entirely relating to the sufficiency of the interest of the assignor in the future salary to distinguish the cases from those of attempted assignments of mere expectation, such as those of an expectant heir. The court held that in the cases cited, the expectation of future salary being founded on existing engagements, was capable of assignment and that the existing interest sufficed to support the transfer of the future expectation. The only other case to which we have been referred is a decision of the Supreme Court of Wisconsin.

In *State Bank* v. *Hastings* (15 Wis., 78), the question being as to the assignability of a judge's salary, the court say : " We were referred to some English cases which hold that the assignment of the pay of officers in the public service, judge's salaries, pensions, etc., was void as being against public policy, but it was not contended that the doctrine of those cases was applicable to the condition of society or to the principles of law or of public policy in this country. For, certainly, we can see no possible objection to permitting a judge to assign his salary before it becomes due, if he can find any person willing to take the risk of his living and being entitled to it when it becomes payable."

We do not understand that the English decisions really rest on any grounds peculiar to that country, although some times expressed in terms which we might not select to express

our views of the true foundation of the doctrine in question. The substance of it all is, the necessity of maintaining the efficiency of the public service by seeing to it that public salaries really go to those who perform the public service. To this extent, we think, the public policy of every country must go to secure the end in view.

The judgments must be affirmed.

All concur.

Judgments affirmed.