[Schloss v. Hewlett.]

# Schloss *v.* Hewlett.

*Action by Deputy U. S. Marshal against Marshal for Fees.*

1.  *United States marshals and deputies ; contract between them for appointment of sub-deputies.*—The United States statutes regulating the appointment, oath and compensation of deputy marshals (U. S. Rev. Statutes, §§ 780, 788), do not contemplate or authorize the appointment, under contract between the deputy and his principal, of sub-deputies who are neither sworn nor commissioned; and such contract being illegal and void, no action will lie on it as between the parties, though the acts of such sub-deputies may be valid, so far as the public and third persons are concerned, as the acts of officers *de facto.*

2.  *Same ; compensation and and fees, contract relating thereto* —Under the statutes of the United States (U. S. Rev Statutes, § 841), the compensation of a deputy-marshal is limited to " three-fourths of the fees and emoluments received or payable for the services rendered by him," and this is subject to further reduction by the Attorney-General, of whose official action in the premises, as shown by the " Register of the Department of Justice," this court would, if necessary, take judicial notice ; and he has no authority, in view of these provisions, even with the assent of the marshal, or under contract with him, to farm out the duties of his office to assistants hired at a fixed compensation, while he is to receive the fees allowed by law as the maximum for the services rendered.

3.  *Assignment by public officer, of claim for fees or compensation.* The law is well settled, that while a public officer may, unless specially prohibited, assign and transfer his claim to compensation on account of past services rendered, an assignment of his claim to compensation for future or continuing services is contrary to public policy, and void.

4.  *Conclusiveness of ruling by executive department at Washington.* In an action brought by a deputy marshal against his principal, to recover compensation claimed for services rendered under contract between them, the action of the proper department at Washington city, disallowing the marshal's account for some of the services rendered, is conclusive of the fact that they were illegal.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This suit was brought by the appellee, Thos. G. Hewlett, against the appellant, Joseph H. Schloss, and resulted in a verdict in favor of Hewlett for $5069.05.

The material facts are stated in the opinion.

L. W. DAY, and D. D. SHELBY, for appellant.—1. A deputy marshal is an officer for whose appointment, qualifications and removal, the laws of the United States expressly provide.—Rev. Stat. U. S. §§ 781, 782, 787; Desty's Federal Procedure, pp. 397, 400. The deputy marshal's fees are

[Schloss v. Hewlett.]

regulated by law.—Des. Fed. Proc., § 841, and note. The remedy of a deputy marshal for fees due him is against the government of the United States. Even if the marshal receive the fees of his deputies, the government is not released, but must pay the deputies, and, if the marshal has misappropriated the money, may sue him on his bond.—*Gaston et al. v. Fitzsimmons et al.*, United States Circuit Court, Northern District of Georgia, Chicago Legal News, December 19, 1885; Dig. Op. Att'ys Gen., page 263, § 2; U. S. Rev. Stat., § 784. 2. Hewlett, as Schloss' deputy, had no right to appoint deputies.—Allen on Sheriffs, 75; Murphy on Sheriffs, § 69; *Perkins & Hopkins v. Reed*, 14 Ala. 336. 3. The deputies, being unsworn, were only officers *de facto*. An officer *de facto* can not maintain a suit for fees. 24 Am. Rep. 715; 9 *ib.* 409; *People v. Hobson*, 1 Denio, 579. 4. The assignment of the fees of Hewlett's so-called deputies to him, being for wages to be earned, conveyed only an equitable title.—*Stewart v. Kirkland*, 19 Ala 162; *Skipper v. Stokes*, 42 *ib.* 255; *West v. Foreman*, 21 *ib.* 400; *Waters v. Carleton*, 4 Port. 205. 5. The contract set up by appellee was contrary to public policy and void.—*Barclay v. Barclay*, 1 Ala. 34; *Hill v. Freeman*, 73 *ib.* 200; *Clark v. Colbert*, 67 *ib.* 94; *Churchill v. Perkins*, 5 Mass. 541; *Demy v. Lincoln, Adm'r.*, *ib.* 385; 1 Add. Contracts, § 226; 1 Stor. Contracts, §§ 577–8. 6. No deputy can receive more than three-fourths of the fees earned by him, and the Attorney-General may reduce the amount, and has limited the earnings of any deputy to $3,000.00 per annum.—Rev. Stat. U. S., § 841; Reg. Dep.Justice of 1876, p. 202. 7. The auditing officers of the Government, under the supervision of the Attorney-General, have the authority to disallow charges made by the marshal or his deputies.—Dig. Op. Att'ys Gen. p. 265, § 35; Rev. Stat. U. S., § 368.

HUMES, GORDON & SHEFFEY, and WALKER & BETTS, *contra.*

No brief came to the hands of the Reporter.

SOMERVILLE, J.—The suit is brought by the plaintiff, Hewlett, to recover of the defendant a large sum of money which he claims to have earned, as fees of office, through his own services and those of eleven assistants or sub-deputies, while acting as United States deputy marshal, the plaintiff having acted in such capacity by appointment of the defendant, who was himself a United States marshal.

The contract between the plaintiff and the defendant, Schloss, according to the plaintiff's version, was in substance

briefly this: The plaintiff was to employ and pay his under deputies, and was to receive three-fourths of all the fees earned by himself and them. These sub-deputies were not sworn or commissioned, but it was understood that process was to be executed by them, which was done in the name of the marshal, and when done their acts were approved by him.

1. The contract was, in our judgment, illegal and void as opposed to the public policy, for one or more reasons. While the laws of the United States fully provide for the appointment, compensation, and removal of deputy marshals, they recognize no such officer as the deputy of a deputy, or a sub-deputy marshal. Every marshal is authorized to appoint one or more deputies, whose powers in executing process are precisely the same as those of deputy sheriffs; and, when once appointed, they become officers of the United States, subject to removal by the judge of the District Court, or by the Circuit Court for the particular district, at the pleasure of either.—U. S. Rev. Stat. (1878), sections 780, 788. Before entering upon the duties of his office, every deputy is compelled to take an oath to faithfully execute process, to well and truly, and without malice or partiality, perform the duties of his office, and to take only his lawful fees.—U. S. Rev. Stat. § 782. This is a very solemn oath, and of great importance in binding the conduct and the conscience of these officers. The contract under consideration, in effect, provides for the appointment by the plaintiff of these unauthorized and unsworn officials, who, it is implied, are to execute important process, involving the liberty and affecting the property of our citizens, not only without authority of law, but in direct opposition to its express provisions. It has been held, very long ago in this State, that a sheriff could not delegate to another the power to appoint a deputy for him, and where the sub-deputy assumed to act under such void appointment, the sheriff could not ratify a levy made in his name by such appointee.—*Perkins v. Reed*, 14 Ala. 536. The same principle will, of course, apply to a marshal and his deputies. The most that can be claimed for these assistants of the plaintiff is, that they were officers *de facto*, under the colorable, but illegal, appointment of the plaintiff. Having no appointment from the defendant, Schloss, and having unlawfully failed to qualify by taking the requisite oath of office, they were not officers *de jure*.—*State v. Carroll* (38 Conn. 449); s. c., 9 Amer. Rep. 409; *Parker v. Kelt*, 12 Mod. 467; *Joseph v. Cawthorn*, 74 Ala. 411; *Cary v. State*, 76 Ala. 78. It may be that the official acts of these persons, so far

as the public and third persons are concerned, were as valid as if they were officers *de jure*, as often held in the case of officers *de facto*. But this rule, based as it is on principles of necessity and justice, was designed to mitigate evils growing out of a violation of the law so far as they affect innocent parties—not to legalize the illegal act from which they flow. It can not be permitted to authorize the making of a contract which has in contemplation the violation of the law.—*State v. Metcalfe*, 75 Ala. 42; 1 Wharton's Law Contr., § 340. The public peace could scarcely be imperiled more seriously than by turning loose upon the country hordes of irresponsible persons, armed with the process of our courts, and without the restraint of oaths or bonds, seizing the property of citizens and arresting their persons. Yet this contract impliedly, if not in express terms, authorizes and contemplates the doing of this very thing. The contract was illegal and void *in toto*, and no recovery could be had under it. Many rulings of the court were opposed to this view of the law and were erroneous.

2. This contract is invalid for another reason. It violates the statutes of the United States governing the lawful compensation allowed deputy marshals. These laws provide that "the allowance to any deputy shall in no case exceed three-fourths of the fees and emoluments received or payable for the *services rendered by him,* and may be reduced below that rate by the Attorney-General, whenever the returns show such rate to be unreasonable."—U. S. Rev. Stat., § 841. We might, if necessary, take judicial notice of the fact, appearing in the Register of the Department of Justice, that the Attorney-General of the United States, under the authority of this statute, has limited the earnings of deputy marshals to the sum of three thousand dollars *per annum.* Reg. of Depart. Just. 1876, p. 202. In making his return of the fees and emoluments of his office, the marshal is required to state under oath, in a report to the Attorney-General, separately the fees due himself personally, and those due to each of his deputies, naming him, and what proportion of them his deputies are to receive.—U. S. Rev. Stat., § 833. Deputy marshals are not authorized, under this law, to farm out the duties of their office by hiring assistants for a fixed compensation, who agree to transfer the fees earned by them to such deputy. Nor can the marshal himself, by his assent, impart any legal validity to such an agreement. The limit of each deputy's compensation is three-fourths of the fees due for services rendered by *him*—not by him and as many other assistant deputies as he may choose to employ. To permit one deputy to buy up the fees of another,

[Schloss v. Hewlett.]

in this way, would be a most palpable evasion of the statute, which would often destroy the useful ends designed to be accomplished by its enactment.

3. There is yet another view. Admitting that the plaintiff's assistants were *de fac'o* deputies of the marshal himself, it is by no means clear that they could themselves recover their fees either of the government, or from the defendant. Although a doubtful question, we shall assume that they are entitled to such recovery, notwithstanding that such fees were earned in their own wrong, and while they were acting in violation of the law.—*Matthews v. Supervisors*, 53 Miss. 715; s. c. 24 Amer. Rep. 715; *Wayne County v. Benoit*, 20 Mich. 176; s. c. 4 Amer. Rep. 382. But the transfer of such fees or emoluments, before earned, and by way of anticipation, was unlawful, and conferred on the plaintiff no right to recover for the portion of the fees due the transferrors. It has long been the settled law of England that, while a pension or compensation for past services might be assigned, that a salary or fees for continuing services due a public official could not be assigned, for the reason that such contracts would tend to operate detrimentally to the public service, and were illegal as opposed to the public policy. *Flarty v. Odlam*, 3 T. R. 682; *Davis v. Marlboro*, 1 Swanst. 75. It is easy to see how great abuses would follow if such transfers were permitted. Not only would there exist a constant temptation to anticipate future earnings under the stress of present financial pressure, at usurious rates of discount, but when completed, one of the strongest incentives to industrious exertion—the expectation of pecuniary reward in the near future—would be gone. This view was taken by the Court of Appeals of New York, in the case of *Bliss v. Lawrence*, 58 N. Y. 442; s. c. 17 Amer. Rep. 273, where the authorities are fully reviewed, and are shown to sustain it. It was there said : "The public service is protected by protecting those engaged in performing public duties, and this, not upon the ground of their private interest, but upon that of the necessity of securing the efficiency of the public service, by seeing to it that the funds for its maintenance should be received by those who are to perform the work, at such periods as the law had appointed for their payment."—See, also, 1 Parsons on Contr. 225; *Jenkins v. Hooker*, 19 Barb. 435; *Parsons v. Thompson*, 1 H. Bl. 322; Story's Eq. Jur. § 1040, *d*.

4. Apart from the illegality of the contract in question, and of the other points above considered, we think the Circuit Court in this suit had no right to call in question the correctness of the decision of the Department of Justice at Washington, in disallowing certain of the fees claimed to be

due to the deputy marshal. The Attorney-General had vested in him by law a general supervising power over the accounts of marshals, and his decision of any point connected with the subject would be conclusive, and not subject to collateral attack by the courts of the country.—Rev. Stat. §§ 368, 846, pp. 62, 159 ; *Dowling v. Blackman*, 70 Ala. 303. If, therefore, the plaintiff were entitled to recover anything, and as the evidence tends to show nothing was said in the alleged contract about such fees as might be disallowed by the Department of Justice, the law would imply, as a part of the contract, that there should be no recovery for such fees, but that the loss of such abatement should fall on those who claimed to have earned them. The very fact of disallowance by one authorized by law to decide the question of their justness is conclusive of their illegality.—*Bynde v. The County*, 16 Wall. 6 ; Dig. Opin. Attorney-General, p. 265, § 35.

The rulings of the Circuit Court was opposed to the foregoing views. Other points are raised, but we need not consider them.

Reversed and remanded.