Jenks, S.
The testator was a pensioner of the United States government. He received, in the usual way of paying .pensions, the check or draft of the pension agent, for $1,200. For this check the National Bank of Norwich gave him its certificate of deposit for $1,200, payable to himself. He held- this certificate at the time of his death, and his executors received the money upon its surrender. He received other pension moneys, a part of which he .sent to the agent who obtained his pension certificate, and held his -note therefor when he died. Upon this note the executors collected the sum of $140.28. *
The testator, in his will, directed his executors to pay certain debts. Those debts have all been paid. Other claims have been presented to the executors, and accepted by them as valid debts against the estate, but have not been paid. Some of the creditors named in the will demanded a larger sum than the testator directed his executors to pay, and the executors paid them more than the will directed, but no more than was justly -due. It is urged, upon this accounting, by the special guardian for the infant heir and legatee, that no greater sum, paid to creditors, should be *137 credited to the executors, than what was directed to be paid by the testator in his will; and that no claims that have been presented and allowed, but not paid, should be decreed to be paid upon this accounting, upon the ground that the entire assets of the estate consist of pension money, which is exempt from the payment of debts by United States statute.
Section 4747 of the Revised Statutes of the United States is as follows : “ No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of the pensioner.”
In Jardain v. Fairton Sav. Fund Ass'n (44 N. J. Law Rep., 376), it was held that money due for pensions, while it remains in the hands of the disbursing officer or agent for distribution, or while in course of transmission to the pensioner is not liable to be seized by creditors under any legal process, but that, after it has come to his hands, it is so liable, like any other funds of the debtor. Spelman v. Aldrich (126 Mass., 113); Friend in Equity v. Garcelon (1 Eastern Rep., 57); Burgett v. Fancher (35 Hun, 647); Stockwell v. Bank of Malone (36 Hun, 583), are to the same effect.
No other construction can reasonably be put upon the language of this statute. After its receipt by the pensioner, it is neither “money due or to become due.” The government only shields the pension money from creditors while it remains in the pension office,' or is being transmitted to the pensioner. The moment it reaches the pensioner, the protecting care of the government ceases. After its receipt, it is liable to the claims of creditors, and is in no manner protected against unwise or improvident disposition. But a different rule applies to accrued pension, not received by the pensioner during life. The accrued pension, to the date of the testator’s death, came to the hands of the accounting party, not as executors but as testamentary guardians of the infant child, and forms no part of the assets of this estate. Section 4718 of the United States Revised Statutes provides that “if any pensioner has died, or shall hereafter die, * * * his widow, or if there is no widow, the child, or children,"of such person, under the age of sixteen years, shall be entitled to receive the accrued pension to the date of the death of such person. Such accrued pension shall not be considered as a part of the assets of the estate of deceased, nor liable to be applied. *138 to the payment of the debts of said estate, in any case whatever ; but shall inure to the sole and exclusive benefit of the widow or children.” This section only exempts the “accrued pension” not received by the pensioner. Pension money received by the pensioner is not exempt by United States statute, but is part of the assets of the estate, and -liable to the payment of "debts ; and the accrued pension not drawn by the pensioner would have been equally liable, but for ,this section.
. The contestant also claims that this money is not liable for the payment of debts under section 1393 of the Code of Civil Procedure. This section provides that “the pay and bounty of a non-commissioned officer, musician or private, in the military or naval service of the United States ; a land warrant, pension or other reward, heretofore or hereafter granted by the United States or by a state, for military or naval services ; a sword, horse, medal, emblem or device of any kind, presented as a testimonial for services rendered in the military or naval service of the United States ; and the uniform, arms and equipments which were used by a person in that service are also exempt from.levy and sale, by virtue of an execution, and from seizure for non-payment of taxes, or in any other legal proceeding.”
This section is broader in its scope than the act of congress, because it exempts pension money in the hands of the pensioner from creditors and payment of taxes. The exemption does not apply to the property purchased with pension moneys, nor to securities taken on the loan of such money. Wygant v. Smith, 2 Lans., 185; Youmans v. Boomhower, 3 T. & C., 21, 26. Therefore, the money received by the executors upon the note is applicable to the payment of debts, and the note in the testator’s hands could have been reached by his creditors.
Could his creditors, during his life, have reached the money deposited in bank? Stockwell v. Nat. Bank of Malone (36 Hun, 583, third department, May, 1885) seems to hold to the contrary, but Justice Bookes expresses his doubts in a well considered opinion, based upon reason and authority. In Burgett v. Fancher (35 Hun, 647, fifth department, March, 1885) the pensioner deposited money with a firm of private bankers. The court, Barker, J., says: “The memorandum delivered to him by the bank is not, in a" commercial sense, a certificate of deposit, nor was it intended to be, for the appellant was authorized to draw against the deposit without the return of the certificate. It is nothing more than the teller’s ticket, issued in the hurry of business, and does not purport to show the real transaction between the parties. It would be difficult to formulate a *139 general proposition by which to determine when the pay and bounty of a soldier has lost the protection of the statute; each case must be adjudicated upon its own state of facts.” I infer that, if the usual certificate of deposit, “in a commercial sense,” had been given, as in the case at bar, a different conclusion would have been reached. When the usual certificate of deposit is taken for money deposited in bank, the identical money is parted with, without any intention or power of reclamation. The relation of debtor and creditor exists between the bank and its depositor, the same as though the money had been lent to a private person, payable on demand.
Without attempting to reconcile these cases, I think the exemption created by section 1393 of the Code has no application after the pensioner’s death. Pension accrued, but not drawn, is protected by section 4747 of the United States statute, and, by section 4718, is made payable, in case of his death, to the widow and children; but farther than that, neither congress nor our own legislature has attempted to go. Federal legislation extends its protecting care over the money till it reaches the pensioner, or his family, in case of his death. Our state legislature shields it while it remains intact in his own hands, and no longer. It has not attempted to exempt the family, after his death, from payment of his honest debts.
My attention has been called to but one case involving this proposition, that of Hodge v. Leaning (2 Dem., 553), in which the learned surrogate of Otsego county held that pension money in the executor’s hands, constituted no part of the assets of the decedent’s estate. His opinion seems to be based upon the sections of the United States statutes heretofore quoted and which, the cases cited hold, have no application to a case where the money has reached the pensioner’s hands.
Prima facie, all the property of a judgment-debtor is liable for debts; and if he would claim an exemption, he must bring himself within some exemption act. Dains v. Prosser, 32 Barb., 290; Twinam v. Swart, 4 Lans., 263. In Crosby v. Stephan (32 Hun, 478), the question was whether a creditor of a widow, in supplementary proceedings, could reach the money received by her on a policy of insurance taken out by the husband for the benefit of his wife. The court (page 480) say: “She is under the common obligation of all persons to pay debts, and unless the law has expressly exempted this property, it is liable. We must not permit sympathy for the widow to outweigh an application of the claims of common honesty.” I think the principle applies equally well to this case. So does the following language of Justice Story, quoted by Justice *140 Allen, in Allen v. Cook (26 Barb., 380): “ Arguments drawn from hardship, impolicy or inconvenience are entitled to little weight. The only sound principle is to declare ‘ ita lex scripta est,’ and it would be going too far to make exceptions which the legislature has not made.” “ A court of law ought not to be influenced,” says another distinguished jurist, ‘‘ or governed by any notions of hardship; cases may require legislative interference, but judges cannot modify the law.”
The salary of a public officer, not due, or not actually paid, cannot be attached by creditors or reached in supplementary proceedings, nor can public officers, by any act of their own, assign or encumber it, before it becomes due. Columbian Institute v. Cregan, 11 Civ. Pro. R., 87; Waldman v. O'Donnell, 57 How. Pr., 215; Remmey v. Gedney, id., 217; Bliss v. Lawrence, 58 N. Y., 442. But it has never been held that, when received, it could not be reached by creditors, or, in case of the officer’s death, that it would not be applicable to the payment of debts.
The payments to those creditors named in the will of a larger sum than the will directs is, therefore, approved; and •the decree will direct the payment of such of the claims as have been presented and allowed as valid claims by the executors.
Objection is made to the payment of the claim of Mr. Manning, on th.e ground that it is outlawed. As it appears, on the face of this claim as presented, that more than eight years had elapsed at the time of the testator’s death since the last item in the account accrued, the claim must be disallowed. The personal claim of the executor, D. Q-. Barber, of nineteen dollars, was not one of those provided for in the will, and no proof has been given on this accounting of its correctness. It seems to have been paid to him as a legatee by his co-executor, under the impression that the will directed its payment. That item in schedule E of the account is, therefore, disallowed. It appears, from the inventory, that the $150, to which the infant heir was by slatute entitled, was not set off to her in the inventory. The decree will, therefore, direct the payment of that amount to such infant, in addition to her legacy. Vedder v. Saxton, 46 Barb., 189; Sheldon v. Bliss, 4 Seld., 31.