## THE UNITED STATES *v.* PHILLIPS.

ARMY REGULATIONS; ASSIGNMENT OF PAY ACCOUNTS.

An army officer stationed in Utah, but absent from his post under orders, being in Washington on January 5 and February 5, assigned his pay accounts for the months of December and January, respectively, at those dates, to defendant, who presented them to the paymaster here and received payment, the proper proof of authority under the army regulations for the absence of the officer from his post being furnished. The officer had been absent from his post since December 9. On December 31 and January 31, respectively, his pay accounts for those months, indorsed to J. & Co., were presented by them to the paymaster in Utah and paid by him. By Section 1440, Regulations U. S. A., an officer is forbidden to assign his pay accounts before they become due. In an action by the Government to recover back the money paid defendant, the court below directed a verdict for defendant; it was *held,* affirming this judgment, that the payments made to defendant were not unlawful, and that the United States had no right to recover them of him.

No. 413. Submitted February 5, 1895. Decided March 5, 1895.

HEARING on an appeal by the United States from a judgment on a verdict directed for the defendant, in an action to recover money alleged to have been erroneously paid by a paymaster of the army on a salary account. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal by the United States from a judgment in an action brought by them to recover certain money paid by mistake to the defendant Robert A. Phillips, as assignee of two monthly pay accounts of John J. Shaw, then a lieutenant in the United States Army.

On January 5, 1887, Robert A. Phillips presented to Major W. F. Tucker, paymaster at Washington, D. C., for payment, the account of the said Shaw, as lieutenant of the 6th Infantry, for $140 for salary due him for the month ending

December 31, 1886. This account was made out in the customary way, duly certified and signed by Shaw and indorsed to Phillips. On February 5, Phillips presented a similar account for the month of January, 1887, duly certified, etc., and indorsed to him. These were paid by Major Tucker, as presented, and retained as vouchers. He was refused credit for them by the Treasury officials and on February 8 addressed a letter to Phillips demanding return of the money.

June 11, 1887, the suit was instituted, and before trial, to wit, January, 1890, credit was allowed Major Tucker and his accounts passed. In December and January, and for a long time before, the Sixth Infantry had been stationed at Fort Douglas, in the Territory of Utah. Major Thaddeus H. Stanton was the paymaster of the troops at that post and usually made his payments by checks on a bank at Salt Lake City, which was a United States depository, in favor of the officers or the assignees of their pay accounts. The account of Shaw for December pay was presented to him on December 31, duly made out and certified and indorsed to T. R. Jones & Co., and was paid by check to said assignees. On January 31 the account for that month was presented in the same manner and paid to the same assignees. The vouchers were afterwards returned to the Treasury and credit was then allowed Major Stanton for the payments. Proof was made of the genuineness of Shaw's indorsement of these accounts to T. R. Jones & Co., but none was offered to prove their signature as attached to the receipt and indorsed on the checks given in payment. These checks were returned to the Treasury by the Salt Lake bank in making its settlement for funds disbursed and were on file in the proper department thereof along with the receipted pay accounts. The court refused to permit the plaintiffs to offer these accounts and checks in evidence because of the failure to prove the signatures of said T. R. Jones & Co., assignees, and an exception was taken to this ruling.

Major Stanton testified that Shaw had drawn his pay from him for years either in person or through his assignees; that he paid the accounts for December and January before anyone else, and that the payments had been passed in his accounts with the Treasury. The following articles of the Army Regulations were introduced in evidence:

"1439. As far as practicable officers will draw their pay from paymasters assigned to pay the posts where they are stationed. When officers are absent therefrom paymasters will, before paying them, require proof of proper authority for such absence."

"1440. An officer shall not hypothecate or transfer a pay account not actually due. When due it may be transferred by indorsement, naming the party to whom it is transferred, and may be paid by the proper paymaster if he be satisfied of the genuineness of the officer's signature, and if no stoppage or other disability as to pay prevents. The date of transfer, certified by the officer whose account it is, will appear in the indorsement. When an officer transfers his pay accounts he will immediately indicate the fact to the chief paymaster of the department in which he is serving through the paymaster who is expected to pay them. If the officer be on leave, or if his accounts are payable in Washington, the notification of transfer will be made to the paymaster-general."

"1491. Overpayments to an officer will be deducted on the first payment after notice of stoppage against him is received, even if the pay accounts have been assigned. The assignee takes the account subject to all risks of stoppage."

It seems that the pay accounts when made out must show where the officer is stationed, when and by whom last paid, and whether he is absent under orders. The accounts presented to and paid by Major Tucker recite that Lieut. Shaw had been away from his post since December 9, under Special Order No. 278, and it is agreed that he was so absent,

and that the assignments made by him to Phillips of his pay accounts were made by him early in January and February, respectively. The contents of this Order 278 are not given in the record.

Upon the closing of the testimony the court directed the jury to return a verdict for the defendant.

*Mr. A. A. Birney*, United States Attorney for the District of Columbia, and *Mr. C. H. Armes*, Assistant Attorney, for the United States.

*Mr. Wm. A. Cook* and *Mr. W. L. Cole* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

In the view that we have taken of the merits of the case it becomes unnecessary to determine the question raised on the first assignment of error, as to the admissibility of the vouchers assigned to T. R. Jones & Co. and the checks given to them in payment thereof, without proof of the genuineness of their purported indorsements. Considering the case as if that evidence had been admitted, we think the court did not err in directing a verdict for the defendant. Conceding that Lieutenant Shaw was entitled to pay for the months of December and January and that the United States, having paid the same twice, have the right to recover the money that was paid through fraud or mistake, it became a question of law for the court to determine upon the evidence, in which there was no conflict, whether the payment to the appellee, as assignee of Shaw, was regular and binding. What was the nature of Special Order No. 278, under which Shaw left his post on December 9 ; where he was required or permitted to go, and what was the limit of his absence, are left to conjecture. We must presume, however, that, as recited in the accounts paid by Major Tucker, he had left his post under orders on December 9, and was therefore not there and could not have made out and assigned his December account on the 31st day of that month.

And the same presumption attaches to the January account. Both must therefore have been made out, indorsed and delivered to the assignees, T. R. Jones & Co., before the pay had accrued due. We must also presume that he was lawfully in Washington on each day that his accounts were signed, indorsed and presented by his indorsee to Major Tucker, who was the regular paymaster there. The regulations (Article 1440) forbade the assignment of an officer's pay account before it became due, and in doing so declared what seems to be a sound rule of public policy already recognized by the courts in the absence of statute or regulation. *Bliss* v. *Lawrence*, 58 N. Y. 442 ; *Schwank* v. *Wyckoff*, 46 N. J. Eq. 560. Lieutenant Shaw had left his post in Utah on December 9, and was in Washington on January 5, and February 5, at least. Being there when his pay became due, it was not reasonably practicable for him to be paid by the paymaster of the distant post which he had left under orders, even if, under that order, it might still be regarded as his station, and it was proper for Major Tucker to pay him, first requiring proof of proper authority for his absence from his post. See Article 1439, *supra.* He did present his accounts to Major Tucker, producing as reason therefor the order under which he had leave of absence. In the absence of proof to the contrary, Paymaster Tucker is entitled to the benefit of the presumption, which attaches to official acts generally, that he acted within the limits of his authority. The officer's pay was due. Report of the payment in Utah had not reached the Treasury. It was not reasonable to suppose that he had been in Utah since the 9th of December to receive his pay, or that he had assigned in advance, in disobedience of the law and the regulations of the service.

No presumption can arise from the action of the officials of the Treasury, for though they first approved and recognized as lawful the payments made by Major Stanton and rejected those made by Major Tucker, they afterwards passed

his account and gave him credit also. The decision in one case is set off by that in the other. As the last was made with knowledge of all the facts and after due consideration, it might even be said that it was a final determination, by the executive officers who had caused the institution of the suit, in favor of Major Tucker and of the regularity of his payment to the appellee. No weight, however, need be attached to their action in either case. The paymaster in Utah must be presumed to have had knowledge of the special order under which Lieutenant Shaw had left Fort Douglas on December 9, and had remained away during the remainder of December and all of the month of January. He ought, therefore, to be presumed to have known that the officer could not have made out and assigned his accounts on the last day of each month as they fell due, and hence that, in violation of regulation No. 1440, he must have made them out and assigned them before they became due.

There is no doubt that each paymaster acted in good faith and without reason to suspect bad faith or fraud on the part of Shaw. But necessarily the payment made by one was irregular and cannot stand, and the Government is entitled to recover it from one or the other of the assignees to whom it was made. Possibly the Army Regulations are somewhat to blame for not making an express and plain provision to cover just such a case as this; but questions with respect thereto arise properly between the paymasters as such and the Government, and are irrelevant here.

Upon all the evidence, including that which was rejected, we are of opinion that the payments made to the appellee were not unlawful and that the United States have no right to recover them of him.

We must, therefore, hold that the court did not err in the instruction to the jury, *and the judgment must be affirmed. And it is so ordered.*

A motion for rehearing was denied.