# THE OHIO NATIONAL BANK OF WASHINGTON
## *v.*
## HOPKINS.

CONTRACTS; NOTARIES PUBLIC, FEES OF; CONSIDERATION; PUBLIC POLICY.

1. An agreement between a bank and a notary public whereby it is agreed between them that in consideration of the notary's employment he will accept in full payment for his services in protesting the bank's negotiable paper, and that held by it for collection, one-half the usual and legal fees charged for such work, is void for want of consideration, and also upon the ground that it is against public policy.

2. And such an agreement is no defence to the bank when sued by the notary to recover one-half of his fees retained by it.

   No. 535.   Submitted February 19, 1896.   Decided March 5, 1896.

HEARING on an appeal by the defendant from a judgment under the 73d rule in an action of *indebitatus assumpsit. Affirmed.*

The COURT in its opinion stated the case as follows :

The declaration in this case contains the common *indebitatus assumpsit* counts, for work done and materials provided, by the plaintiff, Randolph D. Hopkins, for the defendant, The Ohio National Bank of Washington, at its request ; for money lent by the plaintiff to the defendant ; for money paid by the plaintiff for the defendant at its request ; for money received by the defendant for the use of the plaintiff ; and for money found to be due from the defendant to the plaintiff an accounts stated between them.  The amount sued for is $1,251.56 ; and with the declaration was filed an affidavit of the plaintiff, under the 73rd rule of the court below, showing the ground of the claim, and also an account or bill of particulars, whereby the defend-

ant is charged with the receipt, for and on account of the plaintiff, of notarial fees, earned by and due to the plaintiff, as notary public, for protesting, noting for protest, and serving notices of protest, on divers notes, checks, and other commercial paper, from October 1, 1892, to May 6, 1895, amounting to the sum of $2,397.38, with a credit of the sum of $1,145.82, leaving the balance due the sum of $1,251.56, the amount sued for, and set forth in the affidavit.

The defendant denies *in toto* the indebtedness alleged, and in its affidavit of defence under the rule states " that, the plaintiff being a notary public, on or about the first of October, 1892, the defendant bank entered into a verbal contract with the plaintiff, whereby it was agreed between them, that, in consideration of the defendant employing the plaintiff to do its notarial work in protesting its notes, checks, drafts, and such commercial paper belonging to said defendant, or that might come to it through its correspondents, in due course of business, requiring demand of pay-ment and protest, he, the said plaintiff, would accept in full payment for his services fifty *per centum*, or one-half, of the usual and legal fees chargeable therefor, as fast as collected by the defendant, the remaining one-half to be turned over to and retained by defendant as its own ; that pursuant to said agreement the plaintiff received and protested notes, checks, drafts, and other commercial paper belonging to the defendant requiring demand of payment and protest, and from time to time was paid one-half of all the fees therefor, so earned by him and collected by defendant, and full and final settlements were made between them at the end of each calendar month, down to and including June 30, 1895. That having thus paid the plaintiff the full amount due him from October 1, 1892, to June 30, 1895, under said agreement as herein stated, the defendant is not indebted to the plaintiff in the sum of $1,251.56, as claimed by him in his declaration, or in any other sum or sums of money whatever, for the reasons herein stated."

Upon the filing of this affidavit, the plaintiff moved the court for judgment under the rule, which provides that, for want of sufficient affidavit of defence, the plaintiff, who files a sufficient affidavit of claim with his declaration, shall be entitled to judgment; and the ground of the motion for judgment in this case was, that the affidavit of defendant disclosed no valid answer or ground of defence to the claim made by the plaintiff. And the court being of that opinion, entered judgment for the plaintiff accordingly, for the amount claimed in the declaration and affidavit. It is from that judgment that this appeal is taken.

*Messrs. Anderson & Doan* for the appellant:

1. Want of consideration is of no avail against an executed contract. *Awadt* v. *Bldg. Asso.*, 34 Md. 435; *Williams* v. *Colby*, 44 Vt. 40; *Bank* v. *Reed*, 11 Ohio, 498; Bishop on Contracts, sec. 624.

2. The contract in question is not void as against public policy. Its object, viz: the proper protesting of commercial paper, was lawful and right, and the means to be employed in carrying out the contract were in strict compliance with good morals; and to these two things the courts look in determining whether a contract is against public policy.

Section 16, chapter 11, of the statutes now in force in this District, fixes the maximum fees that may be charged by notaries, leaving them perfectly free to charge a less fee, if they choose, without incurring the penalties fixed by section 17. The fees of a notary are his own private perquisites, and therefore, like any private individual, he may seek employment where he can get it, and upon such terms as may be agreed upon, so long as the fees charged do not exceed the limit fixed by section 16.

3. Even if this contract is held to be in violation of the principles of public policy, still it would avail the plaintiff nothing in this action, because in that view he and the appellant are *in pari delicto,* and hence the court will leave the

parties where it finds them. Bishop on Contracts, sec.
489 ; *Meguire* v. *Corwine*, 101 U. S. Rep. 108 ; *Marshall* v.
*Railroad Co.*, 16 How., U. S. 314 ; *Oscanyan* v. *Arms Co.*,
103 U. S. 277 ; *Tool Co.* v. *Norris*, 2 Wall. U. S. 45 ;
*Ashburner* v. *Parrish*, 81 Pa. St. 52 ; *Winpenny* v. *French*,
18 Ohio St. 469 ; *Trist* v. *Child*, 21 Wall. U. S. 441.

*Mr. E. H. Thomas* for the appellant :

1. An executed contract, particularly when based upon
a consideration of the character of the one presented in
this case, is not contrary to good morals and raises no
question of public policy. A notary public receiving from
a bank commercial paper consigned to it for collection, is
the agent of the holder of the note and not of the bank.
*Britton* v. *Niccolls*, 104 U. S. 757. The bank was the agent
of the persons consigning these collections to it. The duty
was imposed upon the bank to employ a proper agent to
secure demand of payment, protest and notice of dishonor.
For this service, the bank was entitled to compensation,
and it might either charge its customer a fee or make an
advantageous arrangement whereby it should be paid for
such service and responsibility without expense to its cus-
tomers. The contract set up therefor is a fair and advan-
tageous one for all the parties, the plaintiff, the bank and
the customer.

2. A notary public is not a public officer, such as a judge,
sheriff, justice of the peace, or clerk of a court. He has
no judicial function as far as commercial paper is concerned,
and he is a purely ministerial officer. *United States* v. *Bixby*,
9 Fed. R. 78.

By virtue of the statute fixing the fees of a notary public
in this District the public are only concerned in the acts of
such officer as to fees to the extent that there shall be no
extortion by the officer. A fine is prescribed against a
notary public who shall take a higher fee than is allowed
by law, but there is no penalty or provision that the notary

may not take a less fee or may not, in his discretion, refuse to exact any fees whatever.

3. Fees of a public officer already earned are the subject of assignment and contract.  *Thurston* v. *Fairman*, 9 Hun, 584 ; *Birbeck* v. *Stafford*, 23 How. Pr. 236 ; *Stephenson* v. *Walden*, 24 Iowa, 84 ; *Platt* v. *Stout*, 14 Abb. Pr. 178 ; *Mott* v. *Robbins*, 1 Hill, 21 ; *Gulliford* v. *De Cardonell*, 2 Salk. 466 ; *Baldwin* v. *Burgess*, 2 J. J. Marsh. 7.

Where the object is protection to the public or Government, this does not prohibit the parties from making a contract between themselves.  Thus, by section 3477 R. S. U. S., the assignment of claims against the Government is prohibited, yet this statute is held to have been intended to protect the Government and not to dictate to the contractor what he should do with the money received on the contract after it had been performed.  *Hobbs* v. *McLean*, 117 U. S. 567.

4. Where there is an existing employment by which compensation is being earned, and which may in the future be expected to be earned, an assignment of such compensation is valid.  *Metcalf* v. *Kincaid*, 54 N. W. Rep. 67 ; *Johnson* v. *Pace*, 78 Ill. 143.

5. If this contract is held to be void as against public policy, it is a matter of defence which can be used to defeat plaintiff's claim, because he is equally in fault with the defendant.  No one can use a void contract as a means of getting better terms than he could have claimed under it. Mechem on Public Officers, sec. 883.

*Mr. Edward M. Cleary, Mr. Arthur Peter* and *Mr. William B. Cleary* for the appellee :

1. The contract set up as matter of defence is wholly without consideration and void.  The choice of a particular officer to perform notarial duties for its customers was a right of selection, but surely not a subject of barter and sale.  Smith on Contracts (7th edition), 184, 170 ; Green-

hood on Public Policy, sec. 339; *Folck* v. *Smith*, 13 Md. 85 ; *Bank* v. *Fink*, 86 Tex. 303.

2. A notary public is a public officer.   *United States* v. *Hartwell*, 6 Wall. 385 ; *Britton* v. *Niccolls*, 104 U. S. 766.

3. The contract set up by the appellant is opposed to the statute regulating the fees of a notary, the languauge of which is : " The fees of notaries public shall be," etc.  This means that they shall be neither more nor less.   Its terms are mandatory, and a contract in disobedience illegal.

In a case of this sort, although the contract is illegal, the courts hold that one belonging to the class intended to be protected will not be considered *in pari delicto*.   Smith on Contracts, 7 ed., 299 ; *Osborne* v. *Williams*, 18 Vesey, Jr., 379 ; *Pinckston* v. *Brown*, 3 Jones Eq. 494, and *Bank* v. *Fink*, 86 Texas, 303.

4. Should it be held that the contract does not contravene the terms of the statute, yet it is contrary to public policy and void ; a public officer cannot assign or give a lien upon his unearned compensation which is given by law whether such compensation be salary or fees.  *Bank* v. *Fink*, 86 Texas, 303, and cases cited ; *Meguire* v. *Corwine*, 101 U. S. 108 ; Mechen on Public Officers, sec. 874.

5. The true test for determining whether or not the plaintiff and defendant were *in pari delicto* is by considering whether the plaintiff could make out his case otherwise than through the medium and by the aid of the illegal transaction to which he himself was a party.  *Taylor* v. *Chester*, 4 Q. B. 310 ; *Simpson* v. *Bloss*, 7 Taunton, 246.

Mr. Chief Justice ALVEY delivered the opinion of the Court :

There has been a question made as to the sufficiency of the terms of the affidavit of defence, under the rule of court, apart from the subject-matter of the defence, set up in the affidavit.   But, with the view we have of this case, that objection is immaterial, and need not be considered.

The two principal questions presented on the affidavit of

the defendant are : 1st. Whether there is any sufficient legal consideration shown for the agreement set up in the defendant's affidavit ? and, 2d. Whether that agreement, if otherwise valid, is not in contravention of sound public policy, and therefore void.

1. With respect to the first of these questions, it is a well known attribute of a notary public, that he is a public officer, recognized as such by the common law, the civil law, and the law of nations. *Governor* v. *Gordon*, 15 Ala. 72 ; *Pierce* v. *Indseth*, 106 U. S. 546, 549. His duties are principally concerned with the commercial law of the world ; but he has many superadded duties, prescribed by statute ; and his fees for services, whether earned as commercial agent, or in the performance of duties prescribed by statute, are all fixed and determined by law. This is the case of the notaries appointed in this District. Rev. Stats. U. S., D. C., secs. 983 and 990. And for the performance of such services the notary himself has no right to ask more or less than the fees prescribed ; nor has any person, for whom such service are performed, the right to require such services of the notary for less than the amount of the fees prescribed. If, therefore, the defendant bank was the owner of the paper protested, or noted for protest, it was bound to pay the fees prescribed by law, for the official service rendered ; and if it was the mere collecting agent for its correspondents, in employing the plaintiff in his official capacity, it was bound to place the paper in the hands of a competent and careful notary, and for his services to pay the lawful fees, and charge the same in account to the correspondent for whose benefit the service was rendered, according to universal custom in such cases. Therefore, the payment of the fees prescribed by law, or half the amount thereof, could constitute no valid consideration for the agreement stated in the affidavit ; nor could the mere favoritism in the selection of the plaintiff in preference to other notaries, for the performance of the official services, be regarded as constituting a valid consideration for the agreement stated.

2. But, if this were otherwise, and the agreement could be regarded as founded upon consideration, such an agreement would, manifestly, be in contravention of sound public policy, and therefore void. The policy is obvious that will forbid such relation to exist, as that created by the agreement set up in the affidavit of defence, between a bank and a notary public, handling the paper affecting the rights of third persons, and where the incentive might often be strong to suppress or conceal the evidence of the negligence of each other. The notary is intended to, be, and from the nature and importance of his office, should in all cases be required to act entirely independent of any influence of the bank or agent placing the paper in his hands for his official action. From the moment that he receives the paper for notarial action, he thereby becomes the agent of the owner of the paper, and his paramount duty is to him, and those affected by his official action. *Britton* v. *Niccolls*, 104 U. S. 757. The bank, acting either as owner of the paper, or as a mere intermediate agent, in employing the services of the notary, should have no share in the profits or fees of the latter's office.

The terms of the agreement, as set forth in the affidavit, are, that the defendant would employ the plaintiff to do all its notarial work, and that the plaintiff would accept in full payment for his services fifty *per centum* or one-half of the legal fees chargeable therefor, as fast as collected by the defendant, and the other half to be retained by the defendant as its own. This, in effect, was an assignment of one-half of the fees as earned in the future, and not the assignment of fees then actually earned and, due. Such an assignment is clearly not allowable. It has been decided in many cases, that an assignment by a public officer of the salary or fees of his office before due and payable, is contrary to public policy and void (*Bangs* v. *Dunn*, 66 Calif. 72; *Schloss* v. *Hewlet*, 81 Ala. 266; *Bank* v. *Fink*, 86 Texas, 303; *Beall* v. *McVicker*, 8 Mo. App. 202); and this upon clear and satisfactory reason.

In the case of *Bliss* v. *Lawrence*, 58 N. Y. 442, the question was most elaborately ʒdiscussed by counsel, and the court, in a learned and well reasoned opinion, unanimously held, that an assignment of the salary of a public officer, before it is earned, is void as against public policy. Cases both English and American were reviewed in that case ; and it was fully shown that the principle was of early foundation in the law. Among the more recent English cases cited by the court in *Bliss* v. *Lawrence,* is that of *Liverpool* v. *Wright,* 28 L. J. (N. S.) Ch. 871, where the question involved was as to the assignability of the fees of the office of a clerk of the peace ; and Vice-Chancellor WOOD, after disposing of another question, then proceeded to say : " There is a second ground of public policy, for which the case of *Palmer* v. *Vaughn,* 3 Swanst. 173, is a leading authority, which is this : That, independently of any corrupt bargain with the appointer, nobody can deal with the fees of a person who holds an office of this description, because the law presumes, with reference to an office of trust, that he requires the payment which the law has assigned to him, for the purpose of upholding the dignity and performing properly the duties of that office. and, therefore, it will not allow him to part with any portion of those fees, either to the appointer or to anybody else. He is not allowed to charge or incumber them. That was the case of *Parsons* v. *Thompson,* 1 H. Bl. 322. Any attempt to assign any portion of the fees of his office is illegal on the ground of public policy, and held, therefore, to be void."

And in principle, the case of *Meguire* v. *Corwine,* 101 U. S. 108, would seem to be quite applicable to this case, and against the defence set forth in the affidavit. In that case, it appears that the testator of the defendant had agreed to pay the plaintiff one-half of all fees he should receive in certain cases, for the aid of the plaintiff in getting the testator the appointment of special counsel for the Government, and for the assistance which the plaintiff was to render in procuring testimony and giving information in support of the

defence. The Supreme Court of the United States held that contract to be against public policy and void. There, the consideration set up was the procuring the appointment of the party as special counsel in cases where the Government was concerned; and here the alleged consideration for the half of the fees to be retained by the defendant is the exclusive employment of the public officer to do all the notarial work required by the defendant to be done, and the payment over of the other half of the fees. In both cases the agreements tended to vicious practices and malfeasance in public office; and the defence in the present case is no less in violation of public policy than the agreement attempted to be enforced in *Meguire* v. *Corwine.*

It is argued, however, on the part of the defendant, that if the agreement set up in the affidavit of defence be void as in contravention of public policy, the plaintiff is not entitled to judgment under the rule of court, because he is in *pari delicto* with the defendant, and therefore not entitled to recover the money retained by the defendant. But there is a distinction between the position of the plaintiff and that of the defendant in this action. The plaintiff asserts a right to recover the amount of fees earned and allowed by law, and which the defendant has received and unlawfully detains from him. To repel this claim, the defendant sets up a collateral and independent contract, as a defence, whereby it was agreed that the fees sued for should be retained by the defendant. The plaintiff in this action does not claim by or through the contract set up by the defendant, but his claim is quite independent of it. It is founded upon his legal rights as prescribed by the statute. It seems to be well established by the decisions, that the test, whether a demand connected with an illegal transaction is capable of being enforced at law, is, whether the plaintiff requires any aid from the illegal transaction to establish his case. *Simpson* v. *Bloss,* 7 Taunt. 246; *Atkinson* v. *Denby,* 6 Hurl. & N. 778; S. C. Ex. Ch. 7 Hurl. & N. 934; *Phalen* v. *Clark,* 19 Conn. 421; *Ins. Co.* v. *Hull,* 51 Ohio St. 270.

In this last mentioned case of *Ins. Co.* v. *Hull*, the principle is very fully discussed, and it was there held, that an illegal agreement made by a plaintiff will not defeat his right to recover, *unless his cause for action is founded upon, or arises out of such illegal agreement.* This would seem to be the result of the recent authorities upon the subject. See *Armstrong* v. *Am. Ex. Bank*, 133 U. S. 469.

The action in this case not being founded upon the illegal agreement set up in the affidavit of defence, but upon an independent consideration, not controverted by the defendant in its affidavit of defence, the judgment under the rule was properly entered.

The judgment, therefore, must be affirmed; and it is so ordered.

*Judgment affirmed.*